1

2

3     IN THE UNITED STATES DISTRICT COURT

4    FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6 KENDRICK PATTERSON, ADAM BERGMAN, ) No.  09-3031 SC

  MICHAEL ATTIANESE, ANDREA LEVY, )

7 DARYL YEAKLE, and RAYMOND R. ) And related case:

  PLANTE, each individually and on )

8 behalf of all others similarly )  09-5322 SC

  situated and the general public, )

9          )

           ) ORDER GRANTING DEFENDANTS'

10    Plaintiffs, ) MOTIONS TO DISMISS

           ) PLAINTIFFS' THIRD CAUSE OF

11   v.      ) ACTION

           )

12 STEPHEN V. O'NEAL, individually and )

13 on behalf of those similarly )

  situated; THOMAS HILL, individually )

14 and on behalf of those similarly )

  situated; ELLEN L. BASTIER, )

15 individually and on behalf of those )

  similarly situated; MARK WEITZEL, )

16 individually and on behalf of those )

  similarly situated; JULIAN )

17 MILLSTEIN, individually and on )

  behalf of those similarly situated; )

18 JEFFREY STEINER, individually and )

  on behalf of those similarly )

19 situated; DAVID P. GRAYBEAL, )

  individually and on behalf of those )

20 similarly situated; ORRICK, )

  HERRINGTON & SUTCLIFFE LLP, a )

21 limited liability partnership; DLA )

  PIPER LLP, a limited liability )

22 partnership; NIXON PEABODY LLP, a )

  limited liability partnership; )

23 HOWREY LLP, a limited liability )

  partnership; and MORGAN LEWIS & )

24 BOCKIUS LLP, a limited liability )

  partnership, )

25          )

26    Defendants. )

27           )

28 _____ )

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1   And related case:                    )
                                         )
2   ADAM BERGMAN, et al.,                )
                                         )
3           Plaintiffs,                  )
                                         )
4      v.                                )
    THELEN LLP, a California limited     )
5   liability partnership, and DOES 1-   )
    500,                                 )
6                                        )
            Defendants.                  )
7   ─────────────────────────────────── )

8   **I.    <u>INTRODUCTION</u>**

9       Plaintiffs are former employees of Thelen LLP ("Thelen"), a

10  nationwide law firm that closed its business in 2008.  Plaintiffs

11  have brought suit against Thelen, a number of its former partners,

12  and, in this case, five separate law firms that have allegedly

13  purchased portions of Thelen's former practice.  These law firms

14  are Morgan, Lewis & Bockius LLP ("Morgan Lewis"), Nixon Peabody LLP

15  ("Nixon Peabody"); Orrick, Herrington & Sutcliffe LLP ("Orrick"),

16  DLA Piper LLP ("DLA Piper"), and Howrey LLP ("Howrey")

17  (collectively, the "Law Firm Defendants").  Plaintiffs' Complaint

18  raises only one cause of action against the Law Firm Defendants,

19  alleging violations of the Worker Adjustment and Retraining

20  Notification Act ("WARN" or "WARN Act").  Am. Compl. ("FAC"),

21  Docket No. 6, ¶¶ 74-84.[1]  The Law Firm Defendants have filed five

22  separate Motions to Dismiss with respect to this cause of action.

23  Docket Nos. 8 ("Morgan Lewis MTD"), 14 ("DLA Piper MTD"), 18

24  ("Howrey MTD"), 24 ("Nixon Peabody MTD"), 36 ("Orrick MTD").

25  Plaintiffs have submitted a single, consolidated Opposition.

26  Docket No. 50.  The Law Firm Defendants submitted five Replies.

27  ─────────────────────

28  [1] All references to the docket in this Order refer to Case No. 09-
    3031.

Docket Nos. 58 ("Nixon Peabody Reply"), 59 ("DLA Piper Reply"), 60 ("Howrey Reply"), 61 ("Morgan Lewis Reply"), 62 ("Orrick Reply").

Having considered the briefs submitted by all of the parties, the Court finds that this matter is appropriate for determination without oral argument.  For the reasons discussed below, the Court hereby GRANTS the Law Firm Defendants' Motions to Dismiss.

## II.   **BACKGROUND**

On October 30, 2008, Thelen announced that it would be dissolving its partnership, and notified its employees that their final day of employment would be November 30, 2008.[2]  FAC ¶ 41. Plaintiffs allege that more than 700 employees of Thelen, including Plaintiffs, lost their jobs when Thelen closed its business.  Id. ¶¶ 1, 31.

Prior to the dissolution of Thelen, an undisclosed number of Thelen's employees and partners left Thelen for employment with various competitors, including the Law Firm Defendants.  Id. ¶¶ 15-30.  Several of these migrations apparently involved the transition of entire practice groups from Thelen to the Law Firm Defendants, and Plaintiffs have characterized these migrations as "purchases" of parts of Thelen's business.  Plaintiffs allege that Orrick purchased Thelen's corporate energy and project finance practice.

---

[2] Morgan Lewis seeks judicial notice of two documents issued by Thelen to its employees.  Morgan Lewis Request for Judicial Notice ("ML RJN"), Docket No. 9, Exs. A, B.  The Court GRANTS this request with respect to the document titled "Notice of Lay Off," ML RJN Ex. A, which Plaintiffs refer to in their FAC, FAC ¶ 41.  Plaintiffs do not object to judicial notice of this document.

The Law Firm Defendants also seek judicial notice of various other documents.  The Court finds that judicial notice of these documents would not be helpful to the resolution of the present dispute.  All other requests for judicial notice are DENIED.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Id. ¶ 16.  DLA Piper "purchased the real estate finance practice .
2  . . . ."  Id. ¶ 19.  Nixon Peabody purchased "a significant part of
3  Thelen's business."  Id. ¶ 22.  Howrey "purchased the construction
4  practice," and Morgan Lewis "purchased the energy transactions
5  practice" of Thelen.  Id. ¶¶ 25, 28.  Plaintiffs do not indicate
6  when the "purchases" took place, except that they occurred "in
7  2008."  Id. ¶¶ 16, 19, 22, 25, 28.  They do not indicate the number
8  of partners or employees that were transferred, or whether any
9  office space, equipment, or other assets changed hands in the
10  course of these "purchases."

11      Plaintiffs characterize this process as the "vivisection" of
12  Thelen by the Law Firm Defendants, and claim that it caused
13  Thelen's eventual demise.  Id. ¶¶ 2, 31.  Plaintiffs seek to
14  represent more than 700 employees who were "left behind" at Thelen
15  -- i.e., those employees who were not fortunate enough to be hired
16  by the Law Firm Defendants when these other firms "purchased"
17  various portions of Thelen's practices.  Opp'n at 9.  Plaintiffs
18  assert that, at the time that each Law Firm Defendant made its
19  putative purchase of part of Thelen's business, the Law Firm
20  Defendants became the constructive employers of each and every
21  Thelen employee for the purposes of the WARN Act, 29 U.S.C.
22  §§ 2101-2109.  Id. at 3-5.  The WARN Act requires an employer to
23  notify its employees at least sixty days before it orders "a plant
24  closing or mass layoff," 29 U.S.C. § 2102(a), and creates a cause
25  of action for employees who are not so notified, id. § 2104(a).
26  Plaintiffs contend that the WARN Act made the Law Firm Defendants
27  responsible for providing them with WARN Act notices before their
28  termination.

In addition to filing a separate suit against Thelen itself, Plaintiffs filed this suit against the Law Firm Defendants and former partners of Thelen.[3]  The Law Firm Defendants now seek to dismiss the WARN Act claim that Plaintiffs have raised against them.

### III. <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  Although well-pleaded factual allegations are taken as true, a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim for relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  The court need not accept as true legal conclusions couched as factual allegations. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949.

---

[3] The FAC also raises two causes of action against former partners of Thelen.  These causes of action have not been challenged by Law Firm Defendants, and are not affected by this Order.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   **IV.   DISCUSSION**

2        Under the WARN Act, "[a]n employer shall not order a plant

3   closing or mass layoff until the end of a 60-day period after the

4   employer serves written notice of such an order" on the employee or

5   his or her representative.   29 U.S.C. § 2102(a).   The WARN Act also

6   creates a cause of action for the violation of this mandate: "Any

7   employer who orders a plant closing or mass layoff in violation of

8   [§ 2102] shall be liable to each aggrieved employee who suffers an

9   employment loss as a result of such closing or layoff . . . ."   Id.

10  § 2104(a).   The WARN Act defines "employment loss" to include "an

11  employment termination, other than a discharge for cause, voluntary

12  departure, or retirement . . . ."   29 U.S.C. § 2101(a)(6).

13       Section 1(b) of the WARN Act also addresses liability in the

14  context of "a sale of part or all of an employer's business."   29

15  U.S.C. § 2101(b).   This provision is explicitly intended to provide

16  an exception to the definition of "employment loss" in certain

17  "sale of business" contexts.   It reads:

18            (b) Exclusions   from   definition   of   employment
              loss.
19               (1) In the case of a sale of part or all of
              an employer's business, the seller shall be
20            responsible for providing notice for any plant
              closing or mass layoff in accordance with section
21            3 of this Act [29 U.S.C. § 2102], up to and
              including the effective date of the sale. After
22            the effective date of the sale of part or all of
              an employer's business, the purchaser shall be
23            responsible for providing notice for any plant
              closing or mass layoff in accordance with section
24            3 of this Act. Notwithstanding any other
              provision of this Act, any person who is an
25            employee of the seller (other than a part-time
              employee) as of the effective date of the sale
26            shall be considered an employee of the purchaser
              immediately after the effective date of the sale.

27

28  Id.

6

This provision ensures that "employees who find themselves transferred from one company to another because of a sale simply are not to be held by any court to have suffered a remediable 'employment loss.'"  Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1280 (10th Cir. 1994).  As stated by the Department of Labor ("DOL"), "WARN notice is only required where the employees, in fact, experience a covered employment loss," and no such notice is required where employees are only "technically" terminated in the course of transferring from the seller's employ to the buyer's.  20 C.F.R. § 639.6.  As several courts have recognized, this provision was crafted by Congress specifically to prevent employees of a "sold" business from bringing suit when they have not suffered an actual "loss of employment." [4]  See 134 Cong. Rec. 16025-26, 16104-

---

[4] Senator Hatch described the purpose of the section when he introduced it to the senate bill:

> There is no question that under [WARN, absent section 1(b)], when a business is sold to another company and the employees go off the old company's payroll and on the new one, a plant closing for the purposes of this act has taken place.

> It would seem fairly obvious that if the business continues on as before with no significant changes of any kind, that there would be no need to go through the formal notification process. But that is not how the bill works.

> . . . .

> . . . My amendment clarifies these points, I think[, by adding section 1(b)].  First, it clearly states that only a plant closing or a mass layoff as defined by this act, after the effective date of sale, would trigger the notice requirements.  So it makes that clear.  That is what I think the authors of the bill wanted to do to begin with, but they have not done so.

> Second, it assigns liability for providing 60

**United States District Court**
For the Northern District of California

1    05 (June 27-28, 1988) (statements of Sen. Hatch).

2         Plaintiffs take this provision one step further.  They claim

3    that when a buyer purchases part of a seller's business, that buyer

4    assumes a duty to notify each and every one of the seller's

5    employees of any foreseeable termination -- even those employees

6    who were never hired by the buyer, those who were not employed in

7    the part of the business that the buyer purchased, and those who

8    continued to be employed with the seller for a period of time after

9    the sale.  Opp'n at 4.  Thus, "[t]he employees of a business such

10   as Thelen are <u>considered</u> (for WARN Act purposes) to be employees of

11   the purchaser after the effective date of sale." <u>Id.</u> (emphasis in

12   original).  Plaintiffs describe this as a "constructive fiction

13   [that] puts the onus of giving WARN Act notice on . . . the

14   successor firm that chooses whether to hire the remaining employees

15   or instead to let them go down with the sinking ship." <u>Id.</u>  Under

16   this theory, as soon as DLA Piper, for example, "purchased"

17   Thelen's real estate finance practice, it became the constructive

18   employer of not just the attorneys and staff that worked in

19   Thelen's real estate finance practice, but of each and every

20   employee of Thelen.  Plaintiffs assert that, from that date

21   forward, DLA Piper owed a WARN duty to all of Thelen's employees,

22   and was required to give them a sixty-day notice if it believed

23   that their termination was reasonably likely.  Opp'n at 5-7.

24        In order to succeed, Plaintiffs must prevail on two points.

25   _____

                  days' notice of a closing or layoff after the
26            effective date of sale to the purchaser. It
              basically defines that -- an assignment of
27            liability.

28   134 Cong. Rec. 16026, 16104-05 (June 27-28, 1988)
     (statements of Sen. Hatch)

**United States District Court**
For the Northern District of California

1    First, Plaintiffs must adequately plead that there was "a sale of

2    part or all of [Thelen's] business;" otherwise their reliance upon

3    section 1(b) of the WARN Act, which is premised upon a "sale,"

4    would be groundless.  See 29 U.S.C. 2101(b).  Second, Plaintiffs

5    must persuade the Court that their expansive reading of section

6    1(b) of the WARN Act is correct, and that the purchase of a part of

7    a business, without more, will impose WARN duties upon a buyer with

8    respect to all of the employees of a seller.

9         **A.   Whether Plaintiffs Have Adequately Pled a "Sale"**

10        Whatever duties section 1(b) of the WARN Act allocates between

11   a buyer and a seller of a business, it does not purport to allocate

12   any duties to a buyer unless "a sale of part or all of an

13   employer's business" has occurred.  29 U.S.C. § 2101(b).  The first

14   question is therefore whether Plaintiffs have adequately pled facts

15   sufficient to conclude that the Law Firm Defendants "purchased"

16   portions of Thelen's business for the purposes of the WARN Act.

17        The FAC includes conclusory statements that each of the Law

18   Firm Defendants "purchased" one or more of Thelen's practices.  FAC

19   ¶¶ 16, 19, 22, 25, 28.  However, the FAC does not describe these

20   purchases, or explain who took part in them or whether there were

21   any negotiations between the Law Firm Defendants and Thelen itself.

22   The Law Firm Defendants maintain that they merely hired the

23   employees that worked in the practice groups that they acquired,

24   and extended partnership offers to Thelen's partners.  The Law Firm

25   Defendants argue that this cannot constitute a "sale" under the

26   WARN Act.  The FAC offers no details that contradict the Law Firm

27   Defendants' descriptions of the transactions.  In their Opposition,

28   Plaintiffs instead argue that when "a group of lawyers departs one

9

**United States District Court**
For the Northern District of California

firm for another, . . . the WARN Act is broad enough to cover these transactions." Opp'n at 25.  Plaintiffs also describe the activities of the Law Firm Defendants as "poaching."  Id. at 1.

Neither the WARN Act nor any related DOL regulation defines "sale."  As noted by a panel for the Eighth Circuit, Congress most likely intended the term to be read in a broad and generic sense:

> In defining the universe of transactions for which the WARN Act deems the seller's employees to be employees of the buyer immediately after the sale, Congress did not use terms common to the tax-oriented world of corporate lawyers and investment bankers, such as "merger," "sale of stock," "sale of assets," and so forth.  Congress instead used a more generic term, "sale of a business," which clearly connotes any transaction that transfers all or part of the employer's overall operations *as a going concern*. . . . [D]efining the exclusion in this generic fashion promotes compliance with the Act because buyers and sellers know when a transaction is intended to transfer a going concern and can determine who must give the WARN Act notice if a covered employment loss is likely to occur.

Smullin v. Mity Enters., 420 F.3d 836, 839 (8th Cir. 2005) (emphasis in original).

Each of the parties rely heavily upon two orders that were issued in a similar WARN Act dispute, which arose from the collapse of another law firm, Brobeck, Phleger & Harrison LLP ("Brobeck"). In McCaffrey v. Brobeck, Phelger & Harrison, L.L.P., former employees of Brobeck alleged that a buyer purchased "all or part" of Brobeck, and was therefore obligated to give Brobeck's former employees WARN Act notices.[5]  No. 03-2082, 2004 U.S. Dist. LEXIS 2768, *8-11 (N.D. Cal. Feb. 17, 2004) ("Brobeck I").  The Brobeck orders are quite instructive as to what may and may not constitute

---

[5] Coincidentally, the purported buyer of Brobeck was Morgan Lewis, which is also a defendant in the present suit.

1   a sale of a law firm (or parts thereof).  In <u>Brobeck I</u>, the

2   "purchasing" law firm not only "extend[ed] offers of partnership to

3   some former Brobeck partners and offers of employment to some

4   former Brobeck employees, as well as purchasing a relatively small

5   quantity of tangible assets," it "also leased Brobeck's former

6   premises, purchased access to Brobeck's informational

7   infrastructure, obtained access to Brobeck's client files, and

8   emphasized lawyer continuity in press releases geared toward

9   convincing Brobeck's clients to become Morgan Lewis's clients."

10  <u>Id.</u> at *10-11.  It had "purchased all of the furniture, fixtures

11  and equipment . . . , and personal property owned by Brobeck and

12  located at" Brobeck's main office, as well as "a license to use and

13  create derivative works of all information available on Brobeck's

14  intranet."  No. 03-2082, 2005 U.S. Dist. LEXIS 40327, *4-5 (N.D.

15  Cal. Apr. 27, 2005) ("<u>Brobeck II</u>").  The purchasing firm "entered

16  into a Purchase and Transition Agreement (PTA) with Brobeck," which

17  "served the purpose of ensuring [the] uninterrupted operation" of

18  Brobeck's business.  <u>Id.</u> at *5, 13.

19      The district court in <u>Brobeck I</u> denied the defendant's motion

20  for summary judgment, and found that the question of "whether there

21  was a sale of all or part of a business within the meaning of 29

22  U.S.C. § 2101(b) is a question for a jury."  2004 U.S. Dist. LEXIS

23  2768 at *11.  Plaintiffs here assert that the question of whether

24  the Law Firm Defendants "purchased" practices from Thelen is

25  therefore a factual question, and that this Court cannot conclude

26  that, as a matter of law, the Law Firm Defendants could not have

27  purchased parts of Thelen's business.  Opp'n at 25-26.  Defendants,

28  on the other hand, focus on part of the decision in <u>Brobeck II</u>,

**United States District Court**
For the Northern District of California

which reflects that a mere decision to hire attorneys from a law firm does not constitute a "purchase" of that law firm.  The court in Brobeck II held that, even though a "sale" may have occurred when the Purchase and Transition Agreement between Brobeck and Morgan Lewis took effect, the sale "could not" have occurred merely because Morgan Lewis voted to admit roughly sixty of Brobeck's partners.  Brobeck II, 2005 U.S. Dist. LEXIS 40327 at *13-14. "While this group may have been admitted en masse, each partner's move to Morgan Lewis was his or her individual decision (as was that of individual clients). Thus, their admission cannot be considered a sale of a business within the meaning of the WARN act." Id.

This Court agrees with the reasoning in both of the Brobeck opinions.  Where facts or pleadings indicate that a transaction or series of transactions between two firms constituted the transfer of business as a going concern, there will be a question of fact as to whether a "sale" has occurred.  However, the mere migration of employees or partners from one firm to another cannot, in itself, constitute a "sale" under the WARN Act.  If Howrey, for example, merely hired the attorneys who worked in Thelen's construction practice, and extended offers of partnership to Thelen's partners who ran that practice, without participating in a transaction with Thelen itself, then Thelen did not engage in a "sale" of its construction practice and Howrey did not "purchase" that practice. The Court is unwilling to conclude that Thelen engaged in a "sale" when it was not privy to the transaction, and received nothing in return for the loss of its practice.  To conclude that the voluntary transfer of employees could constitute a "sale," which

could trigger a reallocation of certain duties between the buyer and the seller, would create too much potential for confusion.

Plaintiffs suggest that, because of the structure of law firms and the fact that practice groups are often transferred between firms solely through the lateral migration of attorneys, this conclusion will effectively mean that the "entire legal profession [is] exempt from the WARN Act," or that "[t]he mega-firms . . . reside in some heavenly aerie that exists far above such mortal laws as the WARN Act." Id. at 27.  This Court disagrees.  As the Brobeck decisions indicate, law firms can and do engage in transactions that can be construed as "purchases" of other law firms under the WARN Act.  This Court simply holds that the mere hiring of employees and partners simply does not amount to such a purchase.

Turning to the FAC, the question is whether bare and conclusory allegations that "purchases" took place, FAC ¶¶ 16, 19, 22, 25, 28, are enough to state a claim at the dismissal stage, in the context of alleged sales of business between law firms.  In order to state a claim that is based on the "sale" of all or part of a law firm's business, Plaintiffs must allege that the Law Firm Defendants actually engaged in a transaction with Thelen, or did something more than merely hire its employees or extend partnership offers to its partners.  In addition, "the non-conclusory 'factual content' [of the FAC] and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Servs., 572 F.3d 962, 969 (9th Cir. 2009).  Even if there is a possibility that discovery could turn up some hypothetical evidence to support a cause of action, Plaintiffs

**United States District Court**
For the Northern District of California

cannot "unlock the doors of discovery" if they are "armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1950.

The Court finds that the mere assertions that "sales" took place, without any supporting detail or inferences based on non-conclusory facts, are nothing more than "[t]headbare recitals of the elements of a cause of action . . . ." Iqbal, 129 S. Ct. at 1949. This Court may evaluate conclusory allegations in light of "obvious alternative explanation[s]" in order to determine whether they are, in fact, plausible. Twombly, 550 U.S. at 567. The Court notes that it is an extremely common practice for attorneys and partners to move laterally from one law firm to another, particularly when seeking to flee from a failing law firm. The normal migration of attorneys from one firm to another provides an "obvious alternative explanation" for the behavior that Plaintiffs describe as the Law Firm Defendants' "purchase" of parts of Thelen's business. C.f. Id. at 567 (rejecting conclusory allegation that defendants engaged in anticompetitive "conspiracy," where behavior described by plaintiffs was "just as much in line with" regular market behavior). There is no doubt that the Law Firm Defendants acquired certain clients and employees of Thelen -- however, the Court need not accept Plaintiffs' bare attempt to label these acquisitions as "purchases." Plaintiffs cannot state a claim by using language -- i.e., "purchase" -- that is, in this context, vague and ambiguous as to whether it includes activity that is covered by the relevant statute. Plaintiffs must instead plead facts that are suggestive of a "sale," as distinct from the more common practice of hiring attorneys and accepting additional partners.

1   Plaintiffs have therefore failed to allege facts that suggest

2   that a "sale" between Thelen and the Law Firm Defendants has taken

3   place.  If Plaintiffs believe that the Law Firm Defendants did more

4   than merely hire Thelen attorneys, or extend partnership offers,

5   then Plaintiffs have leave to allege such facts in an amended

6   complaint.

7       **B.   The Duties of a Partial Buyer Under the WARN Act**

8       Even if this Court assumes that the Law Firm Defendants

9   purchased certain practices from Thelen, Plaintiffs' theory would

10  pose a novel and expansive interpretation of section 1(b) of the

11  WARN Act.  This Court has not found, and the parties have not

12  cited, any case that discusses whether a buyer of part of a

13  business assumes WARN duties to employees who continue to be

14  employed by the seller, where the seller continues to operate as a

15  going concern for a period subsequent to the purchase.  Most cases

16  that interpret section 1(b) address whether an employee who suffers

17  only a "technical" termination, incidental to a sale of business,

18  may bring suit against his employer.  See, e.g., Int'l Oil,

19  Chemical & Atomic Workers, Local 7-517 v. Uno-Ven Co., 170 F.3d

20  779, 783-84 (7th Cir. 1999) (finding that such employees are not

21  entitled to notice); Headrick, 24 F.3d 1272, 1279-82 (same); see

22  also Int'l Alliance of Theatrical & Stage Employees v. Compact

23  Video Servs., 50 F.3d 1464, 1469 (9th Cir. 1995) (finding that such

24  employees are not entitled to notice, even though terms of

25  employment under buyer differed from terms of employment under

26  seller).  Other cases deal with whether a particular purchase of

27  assets may constitute a "sale," such that the buyer of the assets

28  has a duty to notify the seller's employees that it will not be

15

granting them employment.  See, e.g., Smullin, 420 F.3d 836, 838-39 (finding that transfer of assets constitutes sale of business if it transfers part of seller's "overall operations *as a going concern*" (emphasis in original)); Oil, Chemical & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin., Inc., 898 F. Supp. 451, 457 (S.D. Tex. 1995) (contrasting sale of assets with sale of business that entails transfer of employees).

When it is read in isolation, section 1(b) of the WARN Act is ambiguous, although the bare language tends to support Plaintiffs' reading.  It speaks only of "any person who is an employee of the seller," and states that they "shall be considered an employee of the purchaser immediately after the effective date of the sale," without regard to whether the employee is part of the business that the buyer has purchased, or whether the employee actually remains employed with the seller after the purchase.  29 U.S.C. § 2101(b). Nevertheless, the WARN Act, when read as a whole, does not foist upon a buyer the duty to provide WARN notice to all of the seller's employees in perpetuity.  Section 4 of the WARN Act remains the exclusive cause of action available to aggrieved employees, and it creates this cause of action only against "an employer who orders a plant closing or mass layoff."  See 29 U.S.C. § 2104.  A plaintiff therefore cannot prevail under the WARN Act without establishing that an employer has actually ordered a plant closing or mass layoff, or has performed some equivalent act, that has resulted in the plaintiff's loss of employment.  Decisions from courts that have interpreted section 1(b), as well as publications of the DOL, reflect that the provision preserves the requirement that a buyer is only responsible for giving notice when it is the entity that

16

orders the plant closing or termination -- the provision merely "allocates notice responsibility to the party who actually makes the decision that creates an 'employment loss.'"  Compact Video, 50 F.3d at 1468; see also 54 Fed. Reg. 16042, 16052 (Apr. 20, 1989) (stating that provision should "allocate[] responsibility for notice to the party to the transaction that actually makes the decision to order the plant closing or mass layoff").

Plaintiffs cannot claim that the Law Firm Defendants directly "ordered" their termination, as they do not allege that they were ever formally hired or employed by the Law Firm Defendants. Rather, Plaintiffs argue that the duty to notify was triggered by the Law Firm Defendants' decision to not hire the roughly 700 Thelen employees who were left behind.  See Opp'n at 8-10. Plaintiffs correctly argue that buyers can owe WARN duties to the employees of a seller, even if the buyer has never formally hired or employed those employees.  The DOL has expressly stated that "the buyer is responsible for giving notice to workers if it does not hire them."  54 Fed. Reg. at 16052. [6]  This makes sense in certain circumstances -- a buyer that purchases a business as a going concern, and decides not to rehire a sizable portion of the workforce, may in some circumstances be making a decision that is tantamount to a mass layoff or plant closing.  This will be true when a decision not to hire a seller's employees, which is made at or about the time of sale, will result in those employees' imminent and certain loss of employment.

---

[6] Several of the Law Firm Defendants contend that they cannot owe Plaintiffs any WARN duties because the Plaintiffs were never "actually" employed by the Law Firm Defendants.  See, e.g., Orrick Reply at 5.  This is contrary to the DOL's plain statements on this issue.

But this will not be true every time a buyer purchases part of a business from a seller.  In most instances, where a seller continues to operate indefinitely after the sale of part of its business, it would be absurd to suggest that the buyer's decision to not hire its employees (who may continue to work for the seller) is tantamount to an "order" of a mass layoff or plant closing.  In such cases, the buyer never assumes a position to "order" the employee's loss of employment -- it is the seller that continues to hold the power to make that decision.  A decision not to hire employees who do not face imminent and certain loss of employment is not tantamount to an order of a plant closing or mass layoff.

In sum, section 1(b) must be read with sections 2 and 4 of the WARN Act, which only require an employer to give notice if it actually orders "a plant closing or mass layoff."  29 U.S.C. §§ 2102(a), 2104(a).  This means that, for a buyer to be liable to a seller's employees for refusing to hire them, the buyer's decision to not hire a seller's employees must be tantamount to an order of a plant closing or mass layoff.  Otherwise, the partial sale of the business and the decision not to hire employees will not trigger any liability as to the buyer under the WARN Act.

Turning to the facts pled by Plaintiffs, the FAC does not allege facts that suggest that the decision of the Law Firm Defendants, to not hire Plaintiffs and roughly 700 Thelen employees, was the equivalent of a "mass layoff."  Plaintiffs have not alleged when the Law Firm Defendants purchased their respective practices from Thelen, except to say that the purchases took place "in 2008."  FAC ¶¶ 16, 19, 22, 25, 28.  The FAC suggests that after the Law Firm Defendants purchased portions of Thelen, Thelen

**United States District Court**
For the Northern District of California

continued to operate as a going concern.  See id. ¶¶ 41-42.
Plaintiffs continued to be employed by Thelen for an indefinite
period of time after the purchases, until Thelen dissolved on
November 30, 2008.  Id.  Plaintiffs concede in their Opposition
that they were terminated only after the sales.  Opp'n at 13-14.
Thelen's post-sale relationship with its remaining employees was
apparently robust enough for Thelen to believe that it continued to
hold the duty to provide them with WARN notices.  See ML RJN at 1.
It was Thelen's decision -- and not the decision of the Law Firm
Defendants -- to dissolve, and thereby end Plaintiffs' employment.[7]
Id.; FAC ¶¶ 41-42.  In particular, the Court finds it decisive that
1) Plaintiffs continued in the employ of Thelen for an
indeterminate period of time after the alleged purchases, and that
2) Thelen apparently decided to cease its business operations after
the alleged purchases.  Based on the FAC, it would be unreasonable
to infer that any decision of the Law Firm Defendants could be
characterized as an "order" to lay off Thelen's remaining
employees.

C.   **Successor Liability**

The FAC also includes allegations that the Law Firm Defendants
are successors to Thelen's WARN Act liability "[a]s an alternative
to liability under the 'purchaser of part of a business' provision
of WARN."  Opp'n at 29-31; FAC ¶¶ 17, 20, 23, 26, 29.  Plaintiffs
allege that the Law Firm Defendants have "substantially continued
the same business operations of Thelen, with substantially the same

---

[7] Plaintiffs cannot overcome this by including the vague and
unsupported allegation that "[o]n or about October 30, 2008, Thelen
and/or the Law Firm Defendants ordered a 'mass layoff' . . . ."
FAC ¶ 78.

**United States District Court**
For the Northern District of California

employees working in similar jobs and working conditions, with similar supervisory personnel, using similar methods and offering similar services."  FAC ¶¶ 17, 20, 23, 26, 29.  Plaintiffs assert that the Law Firm Defendants can be held liable according to an "equitable, policy driven approach to successor liability" that courts apply in federal labor cases.  Opp'n at 30-31.

This Court will assume, arguendo, that liability under the WARN Act can pass to a successor according to the common law doctrine of successor liability.  But see Brobeck I, 2004 U.S. Dist. Lexis 2768 at *13 ("[T]he doctrine of successor liability, as it has developed in federal labor law, is inapplicable to the Court's determination of Morgan Lewis's potential WARN Act liability.").  To describe the standard that they have in mind, Plaintiffs cite to Golden State Bottling Co. v. National Labor Relations Board, which offers the following guidance: "Successorship has been found 'where the new employer purchases a part or all of the assets of the predecessor employer [and] where the entire business is purchased by the new employer . . . .'"  414 U.S. 168, 182 n.5 (1973)(quoting Nat'l Labor Relations Bd. v. Burns Int'l Security Servs., Inc., 406 U.S. 272, 306 (1972)).

The Court finds that this theory of recovery is inapplicable for two reasons.  First, Plaintiffs have not persuaded this Court that a law firm may become the successor to another law firm simply by hiring its former employees and accepting its former partners.  As previously discussed, the FAC does not provide facts that suggest that any more than this has occurred.  Plaintiffs have not described in any detail the relationship between the Law Firm Defendants and Thelen, such that the Court may draw an inference

**United States District Court**
For the Northern District of California

1   that Thelen had any dealings with, or made any "sale" of business

2   to, the Law Firm Defendants.  Although the doctrine of successor

3   liability in the labor context is not sensitive to the distinction

4   between mergers, consolidations, and purchases of assets, see id.,

5   Plaintiffs cite no legal authority for the proposition that a

6   company may become a successor merely because it hires the

7   employees of another company, or because a firm extends partnership

8   offers to partners of another firm.

9       Second, the form of the transactions described by the FAC

10  suggests that the Law Firm Defendants are poor candidates for

11  successors to Thelen, particularly with regard to WARN Act duties.

12  The FAC describes the "vivisection" of Thelen's business.  FAC ¶ 2.

13  However, the sale of portions of a business to a variety of

14  entities cannot give rise to successor liability as to each and

15  every entity that purchases an indeterminate part of the

16  "vivisected" business.  The law cited by Plaintiffs instead

17  suggests that a surviving employer is a "successor" only if it

18  purchases "substantial assets" of another company. See Golden State

19  Bottling, 414 U.S. at 182-83; see also Fall River Dyeing &

20  Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987) (repeating

21  standard).  Where a buyer purchases only a portion of an existing

22  employer, and particularly where no fewer than five buyers purchase

23  different pieces of an existing employer, it would not be

24  appropriate to treat all of the buyers as successors in liability

25  to all of the employees of the seller, especially where the seller

26  apparently continued to operate as a going concern after the sale.

27  To hold buyers in such circumstances to be "successors" of an

28  employer's WARN Act duties would create confusion.  It would

certainly not further the goals of the WARN Act and its related regulations, which attempt to "avoid confusion regarding service of notice and liability" by creating "an absolute division of responsibility for giving notice" and ensuring that at "all times one of the parties to the transaction is responsible for giving notice." 54 Fed. Reg. at 16052. The circumstances set out by the FAC are therefore not amenable to the successor liability of the Law Firm Defendants.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## V.   <u>CONCLUSION</u>

The Court hereby GRANTS the Motions to Dismiss of each of the Law Firm Defendants.  Plaintiffs' third cause of action against Morgan, Lewis & Bockius LLP, Nixon Peabody LLP, Orrick, Herrington & Sutcliffe LLP, DLA Piper LLP, and Howrey LLP for violation of the WARN Act, is DISMISSED.  Plaintiffs are granted leave to amend this cause of action.  In order to state a claim for which relief can be granted under the WARN Act against the Law Firm Defendants, Plaintiffs will need to allege facts sufficient to support the conclusion that 1) the Law Firm Defendants participated in a "sale" of part or all of Thelen's business, as opposed to merely hiring Thelen's employees or extending partnership offers to Thelen's partners; and 2) the context of the sales was such that the Law Firm Defendants were effectively "ordering" mass layoffs or plant closings by choosing not to hire Plaintiffs.  Plaintiffs may submit an amended complaint no later than thirty (30) days from the date of this Order.

IT IS SO ORDERED.

Dated: November 25, 2009

_____
UNITED STATES DISTRICT JUDGE