BLUM COLLINS, LLP
Steven A. Blum (Bar No. 133208)
Craig M. Collins (Bar No. 151582)
Gary Ho (Bar No. 229995)
707 Wilshire Boulevard, Suite 4880
Los Angeles, California 90017
Telephone: 213.572.0400
Facsimile: 213.572.0401
blum@blumcollins.com
collins@blumcollins.com
ho@blumcollins.com

Attorneys for Plaintiffs
Adam Bergman, et al.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM BERGMAN, KENDRICK PATTERSON, MICHAEL ATTIANESE, ANDREA LEVY, RAYMOND R. PLANTE and DARYL YEAKLE, each individually, and on behalf of all others similarly situated and the general public,<br><br>     Plaintiffs,<br><br>     vs.<br><br>THELEN LLP, a California limited liability partnership, and DOES 1-500,<br><br>     Defendants. | Case No. 3:08-cv-05322-LB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT OF EMPLOYEE COMPENSATION CLASS ACTION**<br><br>[Filed concurrently with Notice of Motion and Motion, Declaration of Craig M. Collins, and Declaration of Matthew McDermott]<br><br>Date: December 8, 2016<br>Time: 9:30 a.m.<br>Place: Courtroom C<br><br>Honorable Laurel Beeler<br><br>Action Filed: November 24, 2008<br>Discovery Cutoff: None Set<br>Trial Date: None Set |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................1

II.  PROCEDURAL HISTORY ...............................................................3

III. SUMMARY OF SETTLEMENT TERMS ......................................6

    A.  Settlement Fund ...................................................................6

    B.  Computations and Allocation of Settlement Fund ..............7

    C.  Payment Deadlines...............................................................8

    D.  Assignment of Rights to Surrogate Court Action ...............9

    E.  Release of Claims .................................................................9

IV. THE SETTLEMENT AGREEMENT DESERVES TO BE APPROVED ...............10

    A. Standard for Approval Under F.R.C.P. Rule 23....................10

    B. Successful Litigation of the Class Action is Uncertain at Best and Prosecuting the Class Action Would Result in Great Expense to All Parties Given the Complexity of the Claims and Defenses ...................................12

    C. The Settlement Provides Substantial Benefits to and is in the Best Interest of the Parties..........................................................................13

    D. The Class Notice Given Met the Requirements of Rule 23 and Due Process and the Settlement Has Overwhelming Support from the Employee Class Members .............................................................................15

    E. The Appointment of Class Representatives and Class Counsel Deserves Final Approval ......................................................................16

V. ATTORNEYS' FEES AND COSTS ...............................................17

    A.  Methods of Determining Attorneys' Fees .........................18

    B.  The One-Third Percentage Recovery Reasonably Reflects the Work Needed to Bring, Prosecute, and Resolve this High Risk Case...........................19

    C. A Lodestar Cross-Check Supports the Reasonableness of the Requested Fee Award...............................................................................21

    D. Class Counsel Has Also Incurred $16,715 in Litigation Expenses to Date......24

    **E. Class Action Administrators Have Incurred $45,346 in Administration Fees** ........................................................................................................**25**

    **F. The Court Should Grant the Enhancement Awards** .........................................**25**

**VI. CONCLUSION** .........................................................................................................**25**

**CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) ..................................................17

*Cunningham v. City of Los Angeles*, 879 F.2d 481, 486 (9th Cir. 1988)................................22

*Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)........................17

*Hacksworth v. Telespectrum Worldwide, Inc.*, Civil Action No. 3:04-1271 (S.D. W.VA. 2004) ...............................................................................................................................21

*Hanlon v. Chrysler*, 150 F.3d 1011, 1026 (9th Cir. 1998)........................................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020, 1027 (9th Cir. 1998) ........................11,13

*Hensley v. Eckerhart*, 461 U.S. at 434 (1983) ..........................................................23

*Hunt v. Check Recovery Sys., Inc.,* 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) ........15

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42, 943 (9th Cir. 2011) ..18,21

*In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008)..................20,21

*In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ......................25

*In re Syncor*, 516 F.3d at 1101,1100.............................................................................13

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)....................10

*In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 47 (S.D. Cal. 1975) ...................................15

*In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004) ...............................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299, 1302 (9th Cir. 1994)20, 24

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)....................................25

*Jaffe v. Morgan Stanley*, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ..........................13

*Johnson v. GMAC Mortgage Group, Inc.*, 2006 U.S. Dist. LEXIS 74931, *8 (N.D. I.A. 2006) ...............................................................................................................................20,21

*Kakani v. Oracle Corp.*, 2007 WL 2221073, at *3 (N.D. Cal. Aug. 2, 2007)........................15

*Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) ..................................................17

*Morales v. City of San Rafael*, 96 F.3d 363-64 (1996) ...................................................23

*Nat'l Rural Telecomms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) .........11

*Newman v. Stein*, 464 F.2d 689, 698 (2nd Cir. 1972)....................................................11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...........................13

*Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010)........................................................22

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ....................................11

*Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2001) ..............................................21

*TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ............................................13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048, 1051 (9th Cir. 2002)...................... passim

*White v. Experian Info. Solutions, Inc.*, No. 05-cv-1070 DOC, 2011 WL 2971957, at *2
     (C.D. Cal. July 15, 2011) ...........................................................................24

*Wing v. Asarco Inc.*, 114 F.3d 986, 988-990 (9th Cir. 1997) ..................................18,20

**STATUTES**

Bankruptcy Code Section 507(a)(4) .......................................................... passim

Cal. Labor Code Section 203 ...................................................................4

Cal. Labor Code Section 1400 *et seq*...............................................................3,4

Fed. R. Civ. P. 23(e) ...................................................................... passim

Fed. R. Civ. P. 23(e)(2), (5) ...................................................................16

Fed. R. Civ. P. 23(h) ...................................................................24

Manual For Complex Litigation (Third) § 30.42...............................................13

Manual for Complex Litig. (Fourth) §§ 21.632-34 (2004)......................................10

Newberg on Class Actions § 14:03 (3d ed. 1992) ...............................................23

Worker Adjustment and Retraining Notification Act, 29 U.S.C. Section 2101 *et seq.*.... passim

## MISCELLANEOUS

Eisenberg, Theodore and Miller, Geoffrey P., "Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008" (2009). Cornell Law Faculty Working Papers ..........19,20,23

## I. INTRODUCTION

Plaintiffs Adam Bergman, Kendrick Patterson, Michael Attianese, Andrea Levy, Raymond R. Plante, and Daryl Yeakle (collectively, "Plaintiffs" or "Named Plaintiffs") respectfully seek an order granting final approval of the class action settlement ("Settlement") as to which this Court granted preliminary approval by its order of June 22, 2016 (Order Granting Motion for Preliminary Approval of Class Action Settlement, NDCA Docket No. 99 ["Order"].) The settlement is more fully described in the Settlement Agreements attached hereto as Exhibits A (Settlement Agreement) and B (Amendment to Settlement Agreement) to the Collins Declaration. Unless otherwise stated, all capitalized terms herein shall have the same meaning as in the Settlement Agreement and Amendment. This motion is unopposed by the Trustee.

The Employee Class consists of all former employees of Thelen LLP ("Thelen"). Thelen terminated them as part of or as a consequence of the November 30, 2008 cessation of principal business operations.

By its Preliminary Approval Order, the Court, among other things:

- appointed Blum Collins LLP as class counsel ("Class Counsel") on behalf of the Employee Class;

- appointed Plaintiffs Adam Bergman, Kendrick Patterson, Michael Attianese, Andrea Levy, Raymond R. Plante, and Daryl Yeakle as Class Representatives;

- approved the form and manner of notice to Employee Class Members and directed that the parties provide notice of the Settlement to Employee Class Members; and

- set a schedule for final approval of the Settlement.

After 8 years of extensive investigation, discovery, litigation, and negotiation, the Employee Class and Class Counsel entered into the Settlement with the Trustee following a private mediation held in September 2014, before the Honorable James L. Garrity, Jr. (who was retired at that time, but has since returned to the bench in the Bankruptcy Court for the Southern District of New York). The parties fully executed the full and final Settlement Agreement

1  attached as Exhibit A on April 20, 2015.  The parties later fully executed an Amendment to the

2  Settlement Agreement attached as Exhibit B on November 24, 2015.

3        Pursuant to the terms of the Settlement, the Trustee agreed to establish a Settlement Fund

4  to distribute ***all remaining assets*** in Thelen's bankruptcy estate ("Estate"), after payments made

5  for administrative costs, fees, expenses, or other expenditures incurred in winding up the Estate,

6  in full satisfaction of the claims asserted in this Class Action, as set forth in the Settlement

7  Agreement.  As of November 2016, an estimated $3 million (after all current administrative

8  claims) remains in the Estate, however this amount is subject to change depending on the

9  Trustee's resolution of the claims of the opt-outs from this litigation as well as any additional

10  administrative expenses incurred in winding up the Thelen estate.  (Collins Decl., ¶ 34.)

11        Settlement is advisable because continued litigation for the Employee Class could risk a

12  recovery substantially smaller than the Settlement given the legal defenses available to the

13  Trustee.  The Trustee denied Plaintiffs' allegations and asserted various defenses to the

14  Employee Class' claims.  The Trustee contends that it provided WARN notices as early as it

15  could possibly have done and was also excused from providing full WARN notice due to

16  unforeseeable business circumstances.  The Trustee strenuously rejects any theory imposing

17  liability for statutory penalties or damages under California and other state law for failure to

18  timely pay wages.  Moreover, the Trustee asserted that the Class Members were not entitled to

19  any vacation payment under the applicable state laws and vacation policies.  The Class Action

20  would be protracted and expensive, and the outcome uncertain.  A trial on the validity of

21  Thelen's defenses would require extensive formal discovery and protracted legal analysis on

22  legal issues that are far from certain.  Collection against Thelen is also far from certain because it

23  has been in bankruptcy for many years in the United States Bankruptcy Court for the Southern

24  District of New York and the Employee Class Members are required to abide by the priority

25  scheme under the Bankruptcy Code.

26        This is why support for the Settlement is overwhelming from Employee Class members.

27  Of the 755 Employee Class Members, only 4 have opted out of the Employee Class after being

28  fully advised of the Settlement's terms and conditions.  (McDermott Decl., ¶ 12, Exh. D.)

1  Accordingly, Plaintiffs request that the Court order final approval of the Settlement Agreement.

2  As part of the final approval, Plaintiffs ask the Court to approve enhancement awards for the

3  Named Plaintiffs and award attorneys' fees and costs to which Thelen will take no position

4  regarding the same unless these awards, fees, and costs increase the Settlement Fund.

5  **II.    PROCEDURAL HISTORY**

6  This case arises out of the closure of the Thelen law firm's offices.  On October 30, 2008,

7  Thelen announced that it was dissolving its partnership and that most of its employees would be

8  terminated effective November 30, 2008.  (Order at 1:21-23.)  The Named Plaintiffs filed a

9  putative class action against Thelen in this Court on behalf of the firm's former employees on

10  November 24, 2008 ("Class Action").  (NDCA Docket No. 1 [Complaint], 55 [Third Amended

11  Complaint].)  The Named Plaintiffs and members of the Employee Class are Thelen employees

12  who were terminated upon the cessation of Thelen's operations on November 30, 2008 and/or

13  are listed in Exhibit A to the Settlement Agreement.  (Order at 1:23-27.)

14  The Hon. Elizabeth Laporte, by order dated March 31, 2009, certified a class of former

15  Thelen employees and appointed the Named Plaintiffs (Adam Bergman, et al.) and Blum Collins

16  LLP as Class Representatives and Class Counsel, respectively.  (NDCA Docket No. 29.)  Judge

17  Laporte later amended the order and certified the current classes and subclasses of the Class

18  Action by orders dated June 26, 2009, and July 10, 2009.  (NDCA Docket Nos. 49, 52.)  As a

19  material term of the Settlement, the parties have agreed to request the amendment of the classes

20  and subclasses to reflect the definition in Section 1.7 of the Settlement Agreement, which shall

21  include a Federal WARN Class, California WARN Class, New York Vacation Subclass,

22  California Vacation Subclass, Connecticut Vacation Subclass, New Jersey Vacation Subclass,

23  and District of Columbia Vacation Subclass, which includes all individuals listed on Exhibit A to

24  the Settlement Agreement (together, the "Employee Class Members").  (Order at 3:5-4:9.)

25  The Class Action alleges that the Employee Class Members are entitled to recover

26  damages for Thelen's failure to provide notification as required by the Worker Adjustment and

27  Retraining Notification Act, 29 U.S.C. Section 2101 *et seq.* (the "Federal WARN Act") and the

28  California Relocations, Terminations and Mass Layoffs Act, Cal. Labor Code Section 1400 *et*

*seq.* (the "California WARN Act"), and to recover damages for accrued but unused vacation time due and owing under relevant state laws at the time their employment with Thelen was involuntarily terminated. Plaintiff Yeakle, on behalf of himself and other similarly situated class members who were employed in Thelen's California offices, also sought waiting time penalties pursuant to Cal. Labor Code Section 203. As stated above, the several proposed classes and sub-classes encompass the different relevant states in which employees and offices were situated. The Class Action sought compensatory damages, disgorgement and restitution, interest, attorneys' fees, and costs. (NDCA Docket No. 1 [Complaint], 55 [Third Amended Complaint].)

After prosecuting the case against Thelen's former counsel at Latham & Watkins, the Class Action was stayed by Thelen's bankruptcy filing. On September 18, 2009, Thelen filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code ("Bankruptcy Action"). (Bankruptcy Court, Southern District of New York, Case No. 09-15631-mew; SDNY Docket No. 1; Order at 2:1-2.) Yann Geron of Fox Rothschild LLP was appointed chapter 7 trustee ("Trustee") of Thelen's Estate.

The Employee Class filed a class proof of claim in the chapter 7 case seeking unpaid wages, accrued but unpaid vacation, and WARN Act benefits. Blum Collins LLP also helped many of the class members file their individual proofs of claims. (Order at 2:8-10.) Since then, Thelen's former partners have moved on to lucrative jobs. Thelen's former employees, many of who struggled to find jobs, have been waiting more than seven years to obtain their wages and benefits as appropriate under the Bankruptcy Code.

Between September 2009 and August 2015, Class Counsel prosecuted the Employee Class Members' claims in the Bankruptcy Court. At Class Counsel's request, Thelen produced large volumes of documents and emails to the Plaintiffs. Class Counsel reviewed tens of thousands of pages of documents, interviewed many witnesses (including discussions with over 80 former Thelen employees), and analyzed Thelen's extensive payroll data. (Order at 2:9-11.)

Thelen vigorously denied and/or disputed the Employee Class Members' claims, including that (a) Thelen failed to pay wages due and owing at the time of the termination of Employee Class Members (Thelen's Answer to Third Amended Complaint ["Answer"], NDCA

Docket No. 55, ¶ 1); (b) Employee Class Members were entitled to payment for accrued but unused vacation time (Answer, ¶¶ 3, 71, 72, 77, 82, 85-91, 93-96); (c) Employee Class Members were entitled to Federal WARN Act and/or California WARN Act damages (Answer, ¶ 2); and (d) Employee Class Members were entitled to waiting time damages (Answer, ¶ 4).

In an effort to advance the rights and interests of the Employee Class, Class Counsel engaged in extensive negotiations over several years with the Trustee. This included not only communications and meetings with the Trustee, but review and research of alleged defenses to the class claims, analysis of payroll and salary information, and extensive calculations of potential damages. During these negotiations, the parties exchanged their respective views of the merits of the Employee Class' claims and the Trustee's defenses. In August 2014, the parties agreed, with the consent of the Bankruptcy Court, to enter into non-binding mediation to resolve their disputes. (Order at 2:11-13.)

In September 2014, the parties participated in a mediation session with the Honorable James L. Garrity, Jr. (who was retired at that time, but has since returned to the bench in the Bankruptcy Court for the Southern District of New York). The parties prepared extensive written materials and engaged in intensive negotiations supervised by Judge Garrity. As a result of the mediation, the parties were ultimately able to resolve their disputes, entered into a non-binding Proposed Term Sheet for Settlement of Employee Claims which led to the execution of a full and final Settlement Agreement on or about April 20, 2015 and a First Amendment to the Settlement Agreement on or about November 24, 2015. (Collins Decl., Exh. A and B; Order at 2:13-15.) The parties' Settlement resolved all asserted claims and/or claims that could have been asserted by the Employee Class Members either in this action or before the Bankruptcy Court in accordance with the terms set forth in the Settlement Agreement. (Order at 6:18-7:5.)

On June 12, 2015, the Trustee filed in the Bankruptcy Court a Motion for an Order Approving a Settlement Agreement Between Trustee and the Employee Class Members ("Trustee's Settlement Motion"). (SDNY Docket No. 733.) On July 21, 2015, the Honorable Michael E. Wiles, United States Bankruptcy Judge, conducted the initial hearing on the Trustee's Settlement Motion. At that time, the Bankruptcy Court delayed approval of the proposed

Settlement and requested supplemental briefing regarding certain bankruptcy law issues.  Class

Counsel and the Trustee amended the Settlement Agreement on or about November 24, 2015 and

submitted supplemental briefing on January 6, 2016 to address the issues raised by Bankruptcy

Judge Wiles.  (SDNY Docket No. 779.)  As a result, the Bankruptcy Court held a second hearing

on January 27, 2016. On February 1, 2016, the Bankruptcy Court issued an order ***approving*** the

Settlement Agreement with the Amendment.  (Order at 2:15-3:4.)

Since the Class Action was pending and certified in the United States District Court

before Thelen's bankruptcy, the Bankruptcy Court and the parties provided in their Settlement

Agreement for the class settlement procedures to be implemented and overseen by this Court.

The Bankruptcy Court will retain jurisdiction over any core bankruptcy matters, including fixing

the amounts and/or priority of any Employee Class Member claims in accordance with the

Bankruptcy Code as well as any claims filed by any individuals who opt out of the Settlement.

(Order at 2:19-3:4.)  However, the settlement process will otherwise proceed normally as a class

action before this Court and in accordance with the terms of the Settlement Agreement subject to

this Court's approval.

Plaintiffs filed their Motion for Preliminary Approval of Settlement of Employee

Compensation Class Action on March 21, 2016.  (NDCA Docket No. 86.)  The Court granted

preliminary approval of the Settlement on June 22, 2016.  (NDCA Docket No. 99.)

### III.    SUMMARY OF SETTLEMENT TERMS

### A.  Settlement Fund

The Settlement Agreement establishes a Settlement Fund to resolve all Employee Class

Member Claims, which, subject to an "Aggregate Settlement Cap" discussed below,

contemplates that it will consist of all remaining assets in Thelen's Estate after all payments are

made for administrative costs, fees, expenses or other expenditures incurred, or which will be

incurred, in the winding up of Thelen's Estate.  The Aggregate Settlement Cap is $4,025,592.49

minus any reserve amounts withheld for opt outs or other secured and priority wage claims

falling outside the Settlement as set forth in the Amendment to the Settlement Agreement agreed

to by the parties (Collins Decl., Exh. B).  This Aggregate Settlement Cap is meant to represent

the total aggregate priority wage claims allowed for all potential Employee Class Members encompassed by the Settlement Agreement. This cap was designed to address the Bankruptcy Court's concern that the aggregate settlement fund and the fees payable to Blum Collins LLP and other costs of administering this Settlement will not violate the priority scheme under the Bankruptcy Code. (Order at 4:10-20.)

The Settlement Fund represents the maximum aggregate amount that is to be paid by the Thelen Estate pursuant to the Settlement Agreement and includes any professional fees, applicable employer payroll taxes, enhancement awards, claims administrator fees, and all other costs and expenses awarded in this matter (if any). Pursuant to the terms of the Settlement Agreement, the Trustee will take no position with respect to the substance of any application for professional fees, enhancement awards, claims administrator fees, and all other costs and expenses sought by Blum Collins so long as the Settlement Fund is not increased. (Collins Decl., Exh. A, Sections 3.1(H), 3.2, 3.3.) The substance of that application is to be considered separately for fairness, reasonableness, adequacy and good faith by this Court and the outcome of those applications is separate from the remainder of the Settlement Agreement and will not terminate the Settlement Agreement, so long as the Settlement Fund is not increased as a result. (Order at 4:22-5:5.)

As of the filing of this motion, the Trustee has estimated that approximately $3 million currently remains in Thelen's Estate after present administrative claims, however this amount is subject to change depending on the resolution of the Trustee's pending litigation against a third party as well as any additional administrative expenses incurred in winding up the Thelen bankruptcy estate.

**B. Computation and Allocation of Settlement Fund**

The Settlement includes a proposed settlement allocation plan designed by Class Counsel, who are experienced in this type of class action litigation, having represented, among others, the former employees of Heller Ehrman LLP and Howrey LLP in similar WARN Act and employment compensation class action litigations. (Collins Decl., ¶¶ 36-41.)

The full terms and procedure for allocating the Settlement Fund is set forth in the Settlement Agreement, however each Employee Class Member's proportionate share of the Settlement Fund is contemplated to be computed as follows (Order at 5:6-6:2):

- Each Employee Class Member shall receive 1 point for every dollar of total combined priority WARN Claims and Vacation Claims attributable to that Class Member, in accordance with Section 507(a)(4) of the Bankruptcy Code, as set forth and agreed upon in Exhibit A to the Settlement Agreement, which has been approved by the Bankruptcy Court.

- The Settlement Fund (after deductions for court approved attorneys' fees, settlement administration fees, enhancement awards, employer payroll taxes, and all other court approved expenses or disbursements) will be divided by the aggregate number of points for all Employee Class Members who do not opt out of the Settlement ("Point Value").

- Each Employee Class Member's total points will then be multiplied by the Point Value to determine his or her "Individual Settlement Amount." In no circumstance shall each Employee Class Member's Individual Settlement Amount fall below $50. Only Employee Class Members who do not timely opt out shall be entitled to receive an Individual Settlement Amount.

- A reserve of $10,950 will be carved out of the Settlement Fund for each individual that opts out of the settlement, *i.e.* the maximum total priority wage claim an individual may obtain under Section 507(a)(4) of the Bankruptcy Code at the time Thelen's bankruptcy was filed. The Trustee will use this reserve to litigate and resolve any claims filed by individuals who opt out of the Settlement.

**C. Payment Deadlines**

The Settlement Fund shall be funded in accordance with the following schedule. The Trustee shall cause the Settlement Fund to be paid to the Claims Administrator on or before the latter of (a) 45 days after the Final Effective Date (i.e., 30 days after all final approvals have been obtained from the District Court and Bankruptcy Court and assuming no appeals are made), or

ME

1   (b) 60 days after the Trustee's final report closing Thelen's Estate is approved by the Bankruptcy

2   Court and the Trustee's proposed final distribution is approved by the Office of the United States

3   Trustee.  (Order at 6:3-6.)

4          The Trustee shall retain the right to make interim distributions to Employee Class

5   Members, in Trustee's sole discretion, through the Claims Administrator on a *pro-rata* basis.  If

6   after 45 days from the Final Effective Date the Trustee has not yet submitted his final report to

7   the Bankruptcy Court, the Trustee has the discretion to make an interim distribution, if any, to

8   the Employee Class Members through the Claims Administrator in an amount to be determined

9   by the Trustee based upon the estate economics at that time.  All Employee Class Members shall

10  have one hundred eighty (180) days after each payment is mailed to cash their settlement checks,

11  otherwise the money will escheat to the state in which the Employee Class Member was working

12  on the date of their termination.  (Order at 6:6-11.)

13         **D.  Assignment of Rights to Surrogate Court Action**

14         Under the Settlement Agreement, the Trustee also assigns to the Employee Class

15  Members all rights to legal fees, costs, or other claims asserted by Thelen in connection with the

16  pending Surrogate's Court action styled, *In the Matter of Estate of Chi-Chuan Wang*, File No.

17  2550/2003 (Surrogate's Court: State of New York, County of New York) (the "Wang Surrogate's

18  Court Action").  (Order at 6:13-16.)  Additional details on the assignment are set forth in the

19  Settlement Agreement.  (Collins Decl., Exh. A.)

20         **E.  Release of Claims**

21         Each Employee Class Member who does not opt out of the Settlement Agreement will

22  release Thelen and the Trustee from any and all claims whatsoever that were asserted, or which

23  could have been asserted, arising out of any matters, facts or claims, in this District Court Action

24  and/or the Bankruptcy Action, including but not limited to, any claims arising under the Federal

25  WARN Act, the California WARN Act., and/or any federal, state, or local law related to vacation

26  pay.  (Order at 6:18-22.)  Notwithstanding the full release above, should the bankruptcy estate

27  have sufficient funds to make a distribution to allowed general, unsecured creditors, Employee

28  Class Members shall not release and shall retain their non-priority general unsecured claims

against Thelen. Any non-priority general unsecured claims retained by Employee Class Members shall be limited to and shall not exceed their individual total Unsecured Vacation plus Unsecured WARN amounts (if any) provided for in Exhibit A to the Settlement Agreement. All Employee Class Members who retain a non-priority general unsecured claim shall be subject to the competing claims of all other creditors as well as compliance with all applicable bankruptcy rules and code provisions. (Order at 6:22-7:5.)

## IV. THE SETTLEMENT AGREEMENT DESERVES TO BE APPROVED

### A. Standard for Approval under F.R.C.P. Rule 23

A class action settlement like the one proposed here must be approved by the Court to be effective. Fed. R. Civ. P. 23(e). The court approval process has three principal steps:

- A preliminary approval hearing, at which the Court considers whether the proposed settlement is within the range of reasonableness and possibly meriting final approval;

- A notice period, during which time Class Members are notified of the proposed settlement and given an opportunity to express any objections; and

- A "formal fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the Class.

*See* Manual for Complex Litig. (Fourth) §§ 21.632-34 (2004).

The first two steps have been completed. First, the Court granted preliminary approval of the Settlement on June 22, 2016. (NDCA Docket No. 99.) Preliminary approval indicates that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Second, notice was disseminated to 755 Employee Class Members via mail sent by Class Action Administrators in accordance with this Court's Order granting preliminary approval of the Settlement. (McDermott Decl.) The contents of the class notice will be discussed in more detail below.

To grant final approval of the Settlement, the Court now must determine whether the Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler*, 150 F.3d 1011, 1026 (9th Cir. 1998). In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

The Ninth Circuit has set forth a list of non- exclusive factors that a district court should balance in deciding whether to grant final approval:

1. the strength of plaintiffs' case;

2. the risk, expense, complexity, and likely duration of further litigation;

3. the risk of maintaining class action status throughout the trial;

4. the amount offered in settlement;

5. the extent of discovery completed, and the stage of the proceedings;

6. the experiences and views of counsel

7. the presence of a governmental participant; and

8. the reaction of the class members to the proposed settlement.

*Rodriguez*, 563 F.3d at 963 (referred to herein as "the Hanlon factors"). Settlements that follow sufficient discovery and genuine arms-length negotiations are presumed fair. *Nat'l Rural Telecomms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Consideration of these factors does not require the Court to decide the questions of law and fact raised in the settled controversies, or to determine whether a proposed settlement is the best that could possibly have been achieved. Rather, the Court need only canvas the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness." See, e.g., *Newman v. Stein*, 464 F.2d 689, 698 (2nd Cir. 1972).

As the Court specifically found in its Order granting preliminary approval, the proposed settlement resulted from extensive arms-length negotiation, provides substantial benefits to the Employee Class, adversarial litigation and preparation for trial continued up through the settlement, and that before reaching this settlement, the settling parties conducted appropriate discovery. (Order at 10:21-22.) The Settlement deserves to be granted for the following reasons.

**B. Successful Litigation of the Class Action is Uncertain at Best and Prosecuting the Class Action Would Result in Great Expense to All Parties Given the Complexity of the Claims and Defenses**

The disputed facts and legal issues in this Class Action are substantial. As previously noted, the Employee Class brings claims for violation of the California state and federal WARN Acts; failure to pay accrued, vested and unused vacation pursuant to state law and contract; failure to pay contract wages other than vacation; and liability under state statutes for waiting time penalties and exemplary damages. In response, Thelen asserted several defenses, including defenses and affirmative defenses that preclude application of the California state and federal WARN Act, preclude application of state laws that potentially require compensation for accrued but unpaid vacation time, and denied the applicability of statutory waiting time penalties and exemplary damages.

Further, fully litigating the claims for statutory waiting time penalties and exemplary damages would require the parties to develop facts through discovery pertaining to "good faith" and "willful" conduct. Moreover, the calculation of damages would require competing experts and the attendant reports, depositions and added expense. A trial on the merits in such litigation would involve significant time and expense, as well as an administrative burden for all involved. Neither the Employee Class nor Thelen has any certainty of succeeding at trial. It is possible that that the Employee Class and Thelen would prove successful on only some of the issues, resulting in a diminished outcome that would not outweigh the time and effort undertaken. Additionally, the interests of the Employee Class Members, who are creditors of a bankrupted partnership, are best served by permitting the Trustee to pay and satisfy the claims of the Employee Class

Members without the further costs and delay inherent in litigation. Any continued resistance and defense of this case by the Trustee and his counsel would significantly diminish the amount of the Settlement Fund. (Order at 10:19-20.)

**C. The Settlement Provides Substantial Benefits to and is in the Best Interest of the Parties**

Thelen has been bankruptcy for years. When determining whether a compromise is in the best interests of the estate and its creditors, the Court must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.* Here, settlement would greatly serve the interests of both the Employee Class and Thelen's Estate.

In approving class settlements, courts generally defer to the judgment of experienced counsel who have conducted arms-length negotiations. See *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery'") (quoting Manual For Complex Litigation (Third) § 30.42). A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

Here, the Settlement Agreement resulted only after extensive, arms-length settlement negotiations that were conducted after rigorous discovery regarding the merits of the disputed claims and the calculation of damages, and under the supervision of an experienced mediator, and now recently unretired bankruptcy judge, James L. Garrity, Jr. The Settlement Agreement

was approved by the Named Plaintiffs as class representatives who oversaw the work of Class Counsel. The Named Plaintiffs are all former employees of Thelen LLP, a former AMLAW 100 law firm, and many of them are attorneys. (Collins Decl., ¶ 45.)

During settlement discussions, Class Counsel were provided with an extensive spreadsheet outlining the alleged damages of the Employee Class Members, along with information related to the finances of Thelen and its Estate. Given the information provided to them, Class Counsel were able to effectively evaluate the relative strengths and weaknesses of the case, and to evaluate the proposed Settlement. Based upon Class Counsel's experience, their understanding of applicable law, and their familiarity with the facts of this case, they believe the proposed Settlement is the best result on behalf of the Employee Class. (Collins Decl., ¶ 49.)

The Settlement Agreement represents a fair and reasonable settlement for three specific reasons. First, the Settlement Agreement fixes the nature and extent of the Employee Class Members' claims which will be allowed against the bankruptcy estate. The amounts of each claim and the priorities afforded such claims are consistent with Thelen's payroll records and applicable law regarding priorities under the Bankruptcy Code. As detailed in the Settlement Agreement, each Employee Class Members' priority wage claim has been allowed in the lesser of the amount of the actual claim or $10,950, which represents the Bankruptcy Code Section 507(a)(4) cap on employee priority wage claims at the time Thelen's bankruptcy was filed. To the extent any individual claim exceeds the priority wage cap, the remainder of that claim will be treated as a general, unsecured claim in the event there is a pro-rata distribution to this class of creditors. (Order at 10:1-9.) (Collins Decl., ¶ 51.)

Second, the Settlement Fund represents the *maximum* amount of remaining estate assets subject to the Aggregate Settlement Cap, less the funds needed to pay allowed administrative claims and any claims for which a reserve of $10,950 has been withheld, such as any opt outs from this Settlement. (Order at 10:10-12.) (Collins Decl., ¶ 52.)

Third, the Settlement Agreement provides for a streamlined method of fixing the Employee Class Members' claims and providing for payment on account of such claims. Hundreds of claims have been filed by Employee Class Members in the Bankruptcy Action. The

claims filed assert various claims for various amounts based on various statutory bases and priorities. The Settlement Agreement allows for resolution of all these claims in a unified, consistent and legally supported method. Absent the proposed Settlement Agreement, the Trustee would be required to review each Employee Class Member's claim in detail and object to any claims that reflected incorrect amounts, asserted improper priorities, or both. The costs associated with preparing formal claims objections would be significant and the process would be time-consuming, which would erode the remaining value of the Estate to the detriment of the Employee Class Members. The proposed Settlement avoids the need to incur such costs, as well as the costs and fees associated with continuing to prosecute or defend against the Employee Class Members' claims. (Order at 10:13-18.) (Collins Decl., ¶ 53.)

In the context of settlement, class plaintiffs typically accept some fraction of their damages in exchange for avoidance of the risks and costs of trial. See, e.g., *Jaffe v. Morgan Stanley*, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("The settlement amount could undoubtedly be greater [40% of predicted damages], but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial."); see also *Kakani v. Oracle Corp.*, 2007 WL 2221073, at *3 (N.D. Cal. Aug. 2, 2007) (granting preliminary approval to settlement for 12.3% of maximum claims). Here, of course, the discount is only slight.

**D. The Class Notice Given Met the Requirements of Rule 23 and Due Process and the Settlement Has Overwhelming Support from the Employee Class Members**

Notice of the proposed Settlement was given to each member of the Employee Class by sending out a notice to the Employee Class via first class mail. (McDermott Decl., ¶¶ 4-7, Exhs. A, B.) (See, e.g., *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 47 (S.D. Cal. 1975) [delivery by first-class mail satisfies Rule 23's individual notice requirement]; see also *Hunt v. Check Recovery Sys., Inc.,* 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) [in cases where most class members can be notified through direct mail, then the direct mailing is sufficient, and further notice is unnecessary].) The class notice provided the best notice practicable, satisfied the notice

requirements of Rule 23, adequately advised Employee Class Members of their rights under the Settlement Agreement, and met the requirements of due process.

The forms of notice fairly, plainly, accurately, and reasonably provided Employee Class Members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) clear definitions of the classes and subclasses; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of Employee Class Members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class representative enhancement awards. (Order at 11:19-12:3.)

The class notice satisfied the requirements of Rule 23(e) because it provided a description of the Employee Class, and it provided the procedural status of the litigation and described the rights under Rule 23(e), including the right to object to the proposal and the date of the proposed hearing on which the Court will make a final determination regarding the settlement. See Fed. R. Civ. P. 23(e)(2), (5). The notice also set forth the significant terms of the Settlement Agreement. This Court approved the class notice in its Order of Preliminary Approval. Thus, the Forms of Notice satisfied the requirements of due process by alerting and informing the members of the Employee Class of the Settlement. Lastly, the Settlement has overwhelming support from the Employee Class Members. Only 4 out of 755 Employee Class Members have opted out of the Settlement. (McDermott Decl., ¶¶ 11, 12, Exh. D.)

**E. The Appointment of Class Representatives and Class Counsel Deserves Final Approval**

The Employee Class has already been certified in this case. The Court should grant final approval to the minor amendments to the class definitions, because revised definitions are very similar to the definitions that were certified, as the Court observed in its Order granting preliminary approval of the Settlement. (Order at 8:9-15.) The revised definitions merely added some vacation classes and modified how some class definitions are phrased. Thus, Plaintiffs ask the Court to rule that the proposed settlement class meets the Rule 23(a) prerequisites of

numerosity, commonality, typicality and adequacy, that common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997); see also *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (holding that claims under the WARN Act are "particularly amendable to class litigation").

In its Order granting preliminary approval of the Settlement, the Court found that the Named Plaintiffs have claims that are typical of members of the Employee Class and that they are adequate representatives. (Order at 11:9-12.) Because there is a unity of purpose among the Employee Class Members and the Named Plaintiffs, the appointment of the Named Plaintiffs as Class Representatives deserves final approval. See *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003).

"Adequate representation depends also on the qualifications of counsel for the representatives." *Id.* In this matter, counsel on behalf of the Employee Class is well qualified to represent the Employee Class Members, as the Court found in its Order granting preliminary approval. (Order at 11:13-15.) Filed concurrently herewith is the Declaration of Craig M. Collins, in which Mr. Collins details his and his firm's qualifications to serve as Employee Class Counsel. Mr. Collins and his colleagues at Blum Collins LLP have represented putative class members alleging WARN Act violations and unpaid wages in relation to the cessation of business at Heller Ehrman and Howrey LLP, law firms like Thelen that went through a dissolution of partnership and bankruptcy. (Collins Decl., ¶¶ 36-41.)

## V.    ATTORNEYS' FEES AND COSTS

As shown above, the proposed Settlement achieves valuable relief for the Employee Class Members. Achieving these results was difficult and time consuming. Investigating, researching, filing, litigating, and settling this Class Action have required significant time and effort from Class Counsel over the last 8 years, which the Collins Declaration describes in great detail. (Collins Decl., ¶¶ 2-35.) Thelen's lawyers at Latham & Watkins and the Trustee's lawyers at Fox Rothschild mounted a considerable defense. Although the action may have

1   reached a resolution prior to trial, substantial work was needed to bring, prosecute, and reach a

2   settlement in the case.

3         After extensive arms-length negotiations to settle this Class Action, the parties agreed

4   that Class Counsel are entitled to apply for attorneys' fees equal to **_one-third_** of the class

5   recovery, plus reimbursement of actual costs.  See paragraph 3.2 of the Settlement Agreement

6   (Collins Decl., Exh. A).  Each of the Class Representatives (all except one are lawyers) agreed to

7   the one-third contingency fee in the engagement agreement he or she signed with Class Counsel.

8   (Collins Decl., ¶ 35.)  Class Counsel's one-third contingency fee was plainly disclosed in the

9   class notice approved by this Court.  (Id.)  Only 4 out of 755 class members opted out of the

10   Employee Class.  (McDermott Decl., ¶ 12.)

11         Notwithstanding the Settlement Agreement, as this is a class action, the Court is required

12   to analyze whether the agreed upon fee is reasonable under the circumstances of the case.  See

13   *Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997). As shown below, Class Counsel's fee is

14   plainly fair, reasonable and adequate in light of both Class Counsel's time and effort expended in

15   prosecuting the case, as well as by the exceptional results achieved for the Employee Class.

16         Accordingly, Plaintiffs request attorneys' fees in the amount of the **_lower_** of (a) one-third

17   of the Settlement Fund (which would be approximately $1 million based on the Trustee's

18   estimate of $3 million currently available for distribution from Thelen's Estate) **_or_** (b)

19   $1,397,204.25, which is Class Counsel's lodestar of $931,469.50 plus a 1.5 multiplier.  Plaintiffs

20   also ask the Court to approve reimbursement of Class Counsel's actual costs in the amount of

21   $16,715, Class Action Administrators' fees in the amount of $45,346, and enhancement award of

22   $5,000 to each of the six Class Representatives.

23       **A.  Methods of Determining Attorneys' Fees.**

24         Courts use two established methods for determining whether a class action fee is

25   reasonable: the "percentage-of-recovery method" and the "lodestar method."  *In re Bluetooth*

26   *Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011).  The lodestar method is

27   mainly used to compensate class counsel for undertaking socially beneficial litigation when the

28   settlement does not create a common fund for the benefit of the class and in cases where the

relief to the class is primarily injunctive in nature. *Id.* at 941. When a settlement produces a common fund for the class, courts primarily employ the percentage-of-recovery method and award class counsel a fee that constitutes a certain percentage of the fund. *Id.* at 942.

According to a study published by the New York University School of Law in November 2009 (Eisenberg & Miller, "Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008", attached as Exhibit D to Collins Decl.), "the percent method is the overwhelmingly dominant method of computing fees, either as the sole method or as the primary method with the lodestar as a check." (Eisenberg at p. 20.) The authors of the study state that they "intended to assist courts in the task of fee setting – and counsel in the task of identifying appropriate fees to request – by supplying an account of compensation practices in courts around the country, studied over an extended period of time, and conducted in an academic setting outside the fires of litigation." (Eisenberg at p. 3.) In the Ninth Circuit, the percentage method is used in 78% of the cases studied, either as the sole method or with the lodestar as a check. (Eisenberg at p. 20.)

In this case, the agreed-upon fee award of one-third of the class recovery is reasonable when analyzed under the percentage method, using the lodestar as a check.

**B. The One-Third Percentage Recovery Reasonably Reflects the Work Needed to Bring, Prosecute, and Resolve this High Risk Case**

Class Counsel negotiated the settlement of this case after 8 years of investigation, research, discovery, and litigation. The value of their services is high. The Settlement Fund negotiated by Class Counsel represents the ***maximum*** amount of remaining estate assets subject to the Bankruptcy Code Section 507(a)(4) cap on employee priority wage claims at the time Thelen's bankruptcy was filed. This result is exceptional considering the difficulty of litigating against the defendant, a large law firm that is bankrupt, as well as the difficulty of litigating against the economic interests of the former partners of Thelen, a formidable foe to say the least. The risk the Class Counsel took in taking the case on a contingency basis has resulted in significant benefits to the 755 members of the Employee Class.

Contingent fees encourage competent counsel to accept cases and provide adequate representation in class actions and justify providing a larger fee than if the matter was billed on a

flat or hourly basis. *OmniVision*, 559 F. Supp. 2d. at 1047. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

At the time of filing, Class Counsel were aware that they would spend potentially thousands of hours of attorney time in contested litigation with no guarantee of success. As discussed below, Class Counsel have in fact reasonably spent approximately 1453.45 hours over 8 years representing Plaintiffs and the Employee Class without compensation and requiring that other work be forgone. (Collins Decl., ¶ 36, Exh. C.)

As the Eisenberg study stated, "Unless class counsel are adequately compensated, class and derivative litigation will be undersupplied in the legal market." (Eisenberg at p. 2.) The study found that the data "uniformly indicate that the greater risk warrants an increased fee." (Eisenberg at p.18.) Class Counsel took great risks by bringing this Class Action against a big law firm that was insolvent. There was no certainty that Class Counsel would be able to collect a judgment from Thelen even if Plaintiffs won or settled their case. The Eisenberg study found that "high risk" employment cases like this one on average results in a fee of 35.1% of the total recovery. (Eisenberg at p. 18.) Here, Class Counsel is asking for one-third of the total recovery.

Moreover, the value of Class Counsel's services does not end with final approval of the Settlement. Class Counsel will need to be available to answer Employee Class Members' questions and oversee the distribution of future payments. The Ninth Circuit Court of Appeal has found all of these factors to be important in determining whether the contractual award (as opposed to statutorily-mandated) of attorneys' fees is reasonable and justified. See *Wing v. Asarco Inc.*, 114 F.3d 986, 988-990 (9th Cir. 1997).

The size of Class Counsel's attorneys' fee is also reasonable in view of the value given to comparable services. Attorneys' fees in the amount of 30% of the total class recovery in WARN Act cases have been found to be reasonable in other courts. See *Johnson v. GMAC Mortgage*

1 | *Group, Inc.*, 2006 U.S. Dist. LEXIS 74931, *8 (N.D. I.A. 2006); *Hacksworth v. Telespectrum*
2 | *Worldwide, Inc.*, Civil Action No. 3:04-1271 (S.D. W.VA. 2004) (Chambers, J.).

3 |       Further, Class Counsel have a proven track record of effectively prosecuting complex
4 | class actions. See *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).
5 | Most relevant here, Class Counsel are among the leading attorneys in the nation with respect to
6 | WARN Act class actions. Class Counsel were appointed as class counsel or have represented
7 | putative classes in other nationwide WARN Act cases, including the cases against Heller Ehrman
8 | LLP and Howrey LLP. Class Counsel's expertise translated into high quality representation of
9 | Plaintiffs and the Employee Class. (Collins Decl., ¶¶ 37-41.)

10 |       In sum, Class Counsel undertook significant risks in taking on a case against a large,
11 | august law firm that had vastly more resources available to it than Class Counsel working on a
12 | wholly contingent basis. Employee Class Members deserve the same quality of representation as
13 | large law firms and corporations. Such entities are usually, as here, represented by teams of
14 | sophisticated and experienced defense attorneys from large commercial law firms. Thus,
15 | reasonable attorneys' fee awards are needed in order to encourage qualified lawyers to take on
16 | the substantial risk of litigation against such formidable foes.

17 | **C. A Lodestar Cross-Check Supports the Reasonableness of the Requested Fee**
18 | **Award**

19 |       District courts are encouraged to cross-check the reasonableness of the fee award
20 | rendered by one method of calculation against the other. *Bluetooth*, 654 F.3d at 943. The
21 | negotiated fee of one-third of the class recovery (approximately $ 1 million) is reasonable when
22 | cross-checked against the lodestar method. The "lodestar method" requires courts to calculate
23 | attorneys' fees by multiplying the number of hours that class counsel reasonably expended on the
24 | litigation by an hourly rate that takes into consideration the region and the experience of the
25 | lawyer. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2001). It is appropriate to calculate
26 | attorneys' fees at prevailing rates to compensate for delay in receipt of payment. *Vizcaino v.*
27 | *Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Courts typically apply a multiplier or
28 | enhancement to the lodestar to account for the substantial risk that class counsel undertook by

accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino*, 290 F.3d at 1051.

Class Counsel have reasonably expended 1,453.45 hours working on this case, which results in a current base lodestar of $931,469.50. The hours submitted have been reviewed and any unnecessary time has been excluded. Further, the attorneys working on this litigation are billed at rates that correlate to their respective education, training, and experience and that are reasonable in the legal markets in Southern California. Exhibit C is a spreadsheet containing all of Class Counsel's time entries on this case over the last 8 years. (Collins Decl., ¶ 36, Exh. C.)

While a plaintiff's lawyer's lodestar is presumed reasonable, *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010), the factors outlined by the Ninth Circuit in *Kerr* provide the best indicator of reasonableness. See *Cunningham v. City of Los Angeles*, 879 F.2d 481, 486 (9th Cir. 1988) (citing *Kerr*). The factors are: (a) the results obtained, (b) the complexity of the issues, (c) the special skill and experience of counsel and the quality of representation, and (d) the contingent nature of the fee agreement. Each of these factors supports the reasonableness of Class Counsel's lodestar here.

The results of Class Counsel's work, the complexity of the issues, the contingent nature of the fee agreement, and the high risk involved in this Class Action have already been discussed above. Further, the hourly rates Class Counsel seek are reasonable. Here, Class Counsel seek compensation based on rates ranging from $550 to $650 per hour, which is reasonable and competitive with hourly rates usually charged by competing lawyers and law firms in Los Angeles, especially given Class Counsel's top-tier expertise in class action litigation, employment litigation, complex litigation, and bankruptcy.

Class Counsel are a team of experienced litigators, two of who have each been in practice for about 30 years, while the third has been in practice for about 13 years. Class Counsel are experienced trial lawyers with specialized knowledge in the issues implicated by this litigation and class action litigation generally. They all acquired deep experience at top nationally known law firms on complex commercial litigation matters. For a summary of qualifications, please see the Collins Declaration. (Collins Decl., ¶¶ 36-41.)

The *Kerr* factors also weigh heavily in favor of applying a **1.5 multiplier** to Class Counsel's lodestar. The lodestar analysis is not limited to the initial mathematical calculation of class counsel's base fee. See *Morales v. City of San Rafael*, 96 F.3d at 363-64 (1996). Rather, class counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. at 434 (1983); *Morales*, 96 F.3d at 364.

In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3. *Vizcaino*, 290 F.3d at 1051 n.6 and Appendix; see also ALBA CONTE & HERBERT B. NEWBERG, Newberg on Class Actions § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded). The Eisenberg study found that in the Ninth Circuit, the mean multiplier is 1.54, and the mean multiplier for employment cases is 1.24. (Eisenberg at p. 24.)

Here, Class Counsel requests a modest multiplier of 1.5 applied to the current lodestar, to be **capped** at one-third of the class recovery. The 1.5 multiplier is readily supported in this case by the recognized lodestar-enhancing factors.

The first factor is the time and labor required. Without repeating all of the work Class Counsel performed, as set forth more fully above and in the Collins Declaration, Class Counsel have expended considerable time and effort researching, investigating, and litigating this action, which has culminated in a Settlement that achieves excellent results for the Class.

The second *Kerr* factor, the preclusion of other employment, also supports the application of a multiplier to the current lodestar. The time spent prosecuting this case precluded other employment by Class Counsel. As shown above, Class Counsel have expended a significant, but necessary, amount of time working on behalf of Plaintiffs and the Employee Class over the past 8 years. That Class Counsel were required to devote attention to this case as opposed to other cases provides further support for applying a 1.5 multiplier in this case.

Finally, the risk that further litigation might result in lesser or no benefit to the class is a significant factor in deciding whether to use a multiplier. See *Vizcaino*, 290 F.3d at 1048, see

also *Wash. Pub. Power Supply*, 19 F.3d at 1302 (district court's failure to apply multiplier to lodestar calculation was abuse of discretion where case was "fraught with risk and recovery was far from certain"). Again, Class Counsel undertook representation knowing there was uncertainty surrounding the applicable legal and factual issues and continued to prosecute the case in the face of substantial opposition by experienced defense counsel, investing hundreds of hours of attorney time and thousands of dollars in hard costs. Accordingly, in light of the potential pitfalls that this litigation faced, Class Counsel faced significant risk in continuing with the litigation and, given the meaningful relief achieved by the Settlement, the Court shouldn't hesitate to apply a conservative multiplier of 1.5.

In sum, the lodestar method of calculation supports the requested one-third contingency fee. The lodestar amount, after application of the 1.5 multiplier, equals $1,397,204.25, which exceeds $1 million, which is one-third of the $3 million estimated to be available for distribution from Thelen's Estate. Thus, the requested one-third contingency fee is reasonable when analyzed under either the percentage or lodestar method, and the Court should approve the requested attorneys' fees.

### D. Class Counsel Has Also Incurred $16,715 in Litigation Expenses to Date

It is settled that in a class action settlement, "in addition to attorneys fees, reasonable costs and expenses are eligible for reimbursement." *White v. Experian Info. Solutions, Inc.*, No. 05-cv-1070 DOC, 2011 WL 2971957, at *2 (C.D. Cal. July 15, 2011); see Fed. R. Civ. P. 23(h). Here, the Settlement Agreement states that Class Counsel is entitled to apply for reimbursement of "actual costs." (Exh. A, para. 3.2.) Here, Class Counsel requests $16,715 in reimbursable expenses, which deserve to be granted. (Collins Decl., ¶ 42.) These expenses include approximately $10,000 in filing fees, summons and service fees, mailing, messenger delivery fees, other court costs, and reasonable travel and lodging for appearances at court hearings in San Francisco and New York City (Class Counsel are based in Los Angeles). These expenses were necessary litigation expenses and costs that were reasonably expended by Class Counsel. In fact, $10,000 is significantly lower than the actual costs incurred. Class Counsel also seek $6,715 in mediation fees paid to Judge Garrity.

**E.  Class Action Administrators Have Incurred $45,346 in Administration Fees**

In its Order granting preliminary approval of the Settlement, the Court appointed Class Action Administrators, Inc. ("CAA"), as the claims administrator.  It has and will continue to administer the Settlement, including the distribution of payments to the Employee Class Members.  Plaintiffs submit the declaration of Matthew McDermott of CAA, which states that CAA's fees in this case are $45,346.  (¶ 13.)  CAA's fee request should be granted.

**F.  The Court Should Grant the Enhancement Awards**

Finally, the proposed Settlement Agreement provides an "Enhancement Award" of up to $5,000 to each of the six Named Plaintiffs.  The Trustee takes no position with respect to these requested Enhancement Awards so long as they do not increase the Settlement Fund.  (Exh. A, para. 3.2.)  Courts have found that incentive payments to class representatives are permissible and actually are an integral, necessary part of the class action process.  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), quoting *In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In this case, all of the Named Plaintiffs performed important services for the benefit of the Employee Class.  In addition to incurring the risks inherent in serving as Named Plaintiffs, they provided information regarding the structure of Thelen and the facts of the layoff, they produced relevant documents, they provided declarations about their relevant experiences at Thelen, and they worked with Class Counsel throughout the case.  The Named Plaintiffs have spent many hours over 8 years monitoring and participating in the litigation of this case and the settlement negotiations.  Further, they have with Class Counsel's advice made all final decisions regarding settlement.  Accordingly, the $5,000 payments requested by each of the six Named Plaintiffs (for a total of $30,000) are appropriate.  (Collins Decl., ¶ 54.)

**VII.  CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court grant final approval of the Settlement and requests for attorneys' fee, cost reimbursements, and enhanced awards, and enter judgment accordingly.

Dated: November 17, 2016

BLUM | COLLINS LLP
   Steven A. Blum
   Craig M. Collins
   Gary Ho


By   /s/ Craig M. Collins
Attorneys for Plaintiffs Adam Bergman,
Kendrick Patterson, Michael Attianese, Andrea
Levy, Raymond Plante, and Daryl Yeakle and
the Employee Class Members