1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                                San Francisco Division

11   ADAM BERGMAN, KENDRICK                    No. 3:08-cv-05322-LB
     PATTERSON, MICHAEL ATTIANESE,
12   ANDREA LEVY, RAYMOND R. PLANTE,           ORDER APPROVING CLASS-ACTION
     AND DARYL YEAKLE, each individually and   SETTLEMENT, DISMISSING CASE, AND
13   on behalf of others similarly situated and the   ENTERING FINAL JUDGMENT
     general public,
14                                             [Re: ECF No. 102]
                       Plaintiffs,
15
                  v.
16
     THELEN LLP, a California limited liability
17   partnership, and DOES 1-500,

18                     Defendants.

19

20                                  **INTRODUCTION**

21       The named plaintiffs worked for Thelen LLP, a law firm that dissolved its partnership in 2008

22   and discharged most of its employees. The plaintiffs then sued Thelen on behalf of themselves

23   and other employees, claiming violations of federal and state labor laws. They seek damages for

24   failure to provide notification to them under the Federal Worker Adjustment and Retraining

25   Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, and the California WARN Act, Cal. Labor

26   Code § 1400 *et seq.*, and they seek payment for accrued vacation time under the relevant state

27   laws. California employees also seek waiting-time penalties.[1] In 2009, the court certified classes

28   [1] Third Amended Complaint ("TAC") – ECF No. 51-1. Citations are to the Electronic Case File
     ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

and subclasses to reflect the different states and offices where the employees worked.[2] Also in 2009, Thelen filed for Chapter 7 bankruptcy, which stayed the case.[3] In 2015, the parties entered into a settlement agreement, and the bankruptcy court approved the settlement in 2016.[4] The plaintiffs then filed their unopposed motion for preliminary approval of the proposed class-action settlement; the court approved the settlement preliminarily in June.[5] The plaintiffs moved for final approval of the class-action settlement; the defendants did not oppose the motion.[6] The court held a fairness hearing on December 8, 2016.[7] The court finds the settlement fair, adequate, and reasonable, and approves the final settlement, including fees, costs, and the incentive awards.

**STATEMENT**

**1. Other Information About the Lawsuit**

After Thelen filed for bankruptcy, the plaintiffs filed a class proof of claim in the Chapter 7 case, seeking unpaid wages, accrued but unpaid vacation time, and WARN Act benefits.[8] Class counsel prosecuted the claims in the bankruptcy case, reviewing tens of thousands of pages of documents, interviewing witnesses, and analyzing payroll data.[9] The parties engaged in negotiations for years and ultimately agreed in 2014 — with the consent of the bankruptcy court — to non-binding mediation.[10] The parties mediated with U.S. Bankruptcy Judge James L. Garrity (then retired but since returned to the bench) and ultimately executed a settlement agreement.[11] After the initial hearing on the settlement, the parties amended the settlement

---

[2] *See* Order – ECF No. 52.

[3] *See* Order − ECF No. 63.

[4] Exs. A, B & C to Collins Decl., ECF Nos. 86-2 to -5.

[5] Motion — ECF No. 86-1; Order — ECF No. 99.

[6] Motion — ECF No. 102.

[7] Minute Order — ECF No. 107.

[8] Collins Decl. ¶ 7 — ECF No. 86-2.

[9] *Id.* ¶ 8.

[10] *Id.* ¶ 10.

[11] *Id.* ¶ 11 & Ex. A.

1    agreement.[12] After a second hearing, the bankruptcy court approved the amended settlement

2    agreement.[13] In its approval order, the bankruptcy court authorized the parties to seek approval of

3    the settlement agreement, the relief, class certification, and notice and opt-out rights under normal

4    class-certification settlement procedures in the Northern District. It retained "jurisdiction over this

5    matter as provided for in the [settlement] Agreement and Amendment, which includes but is not

6    limited to jurisdiction over: (i) the classification and/or the calculation of the Settlement Fund[;]

7    (ii) the amounts and/or priority of the claims of the Employee Class Members[;] and (iii) the

8    claims of any Employee Class Members who opt-out of the settlement."[14]

9

10    **2. The Settlement**

11         The parties agreed to the following class definitions in the settlement agreement:

12         (A) **Federal WARN Class.** All persons employed at any of Defendant's facilities in
         New York, California, New Jersey, Washington, D.C., or Connecticut that
13         employed at least 50 people who are "affected employees" within the meaning of
         29 U.S.C. § 2101(a)(5) and who (1) were involuntarily terminated without cause
14         on their part from a facility at which Defendant ordered a mass layoff or plant
         closing (as those terms are defined in the Federal WARN Act) on or about
15         November 30, 2008; or (2) were involuntarily terminated without cause on their
         part as the reasonably foreseeable consequence of a mass layoff or plant closing
16         (as those terms are defined in the Federal WARN Act) ordered by Defendant on
         or about November 30, 2008. Excluded from this Class are all individuals who,
17         60 or more days prior to their date of termination, received notice that their
         employment would terminate.
18
         (B) **California WARN Class.** All employees who worked at one of Defendant's
19         covered establishments (as that term is defined in California Labor Code section
         1400) in California and who were involuntarily terminated without cause on their
20         part pursuant to a mass layoff, relocation, or termination (as those terms are
         defined in California Labor Code Section 1400) ordered by Defendant on or about
21         November 30, 2008. Excluded from this Class are all individuals who, 60 or more
         days prior to their date of termination, received notice that their employment
22         would terminate.

23         (C) **New York Vacation Subclass.** All former employees of Defendant in the State
24         of New York whose employment with Defendant ended after October 30, 2008 and who had
         accrued but unused vacation time at the time their employment with Defendant ended for
25         which Defendant did not fully compensate such employees.

26    _____

27    [12] *Id.* ¶ 12 & Ex. B.

28    [13] *Id.* ¶¶ 12-13 & Ex. C.

     [14] *Id.,* Ex. C – ECF No. 86-5 at 4.

1

2

**(D) California Vacation Subclass.** All former employees of Defendant in the State of California whose employment with Defendant ended after October 30, 2008 and who had accrued but unused vacation at the time their employment with Defendant ended for which Defendant did not fully compensate such employees.

3

4

5

**(E) Connecticut Vacation Subclass.** All former employees of Defendant in the State of Connecticut whose employment with Defendant ended after October 30, 2008 and who had accrued but unused vacation time at the time their employment with Defendant ended for which Defendant did not fully compensate such employees.

6

7

8

**(F) District of Columbia Vacation Subclass.** All former employees of Defendant in the District of Columbia whose employment with Defendant ended after October 30, 2008 and who had accrued but unused vacation time at the time their employment with Defendant ended for which Defendant did not fully compensate such employees.

9

10

11

**(G) New Jersey Vacation Subclass.** All former employees of Defendant in the State of New Jersey whose employment with Defendant ended after October 30, 2008 and who had accrued but unused vacation time at the time their employment with Defendant ended for which Defendant did not fully compensate such employees.[15]

12

13

14

15

16

17

18

19

The definitions for the following classes differ from those that the court previously approved or were not certified: the subset of the Federal WARN class that applies to employees in New Jersey and Washington D.C.; the New York Vacation Subclass; the California Vacation Subclass; the Connecticut Vacation Subclass; the District of Columbia Vacation Subclass; and the New Jersey Vacation Subclass. The plaintiffs agreed to seek modification or certification of these to match the definitions in the settlement agreement.[16] The settlement classes add some vacation classes and modify how some of the class definitions are phrased but are very similar to the classes that the court certified previously.

20

In summary form, the settlement agreement is as follows.

21

22

23

24

25

26

The settlement agreement establishes a Settlement Fund with an Aggregate Settlement Cap. The settlement contemplates distributing all remaining assets in Thelen's bankruptcy estate after payments made for administrative costs, fees, expenses, or other expenditures incurred in winding up the estate. The Aggregate Settlement Cap is $4,025,594.49 minus any reserve amounts withheld for opt-outs or other secured and priority wage claims falling outside the settlement agreement.[17] It is meant to represent the total aggregate priority wage claims allowed for the class

27

28

[15] Settlement Agreement – ECF No. 86-3 5-6, § 1.7.

[16] *Id.*

[17] First Amendment to Settlement Agreement, §§ 1.29 & 3.1(H) – ECF No. 86-4 at 4-5.

members in the settlement agreement. The cap was designed to address the bankruptcy court's concern that the aggregate settlement fund, the fees paid to class counsel, and the costs of administering the settlement will not violate the priority scheme under the Bankruptcy Code.[18] In November 2016, the trustee estimated that $3 million is left in the estate after present administrative claims; this amount may change depending on the resolution of the trustee's litigation against a third party and other expenses incurred in winding up the estate.[19]

The settlement fund is the maximum aggregate amount to be paid by Thelen under the settlement agreement, and includes attorney's fees, employer payroll taxes, enhancement awards (up to $5,000 for each named plaintiff), claims-administrator fees, and other costs and expenses awarded.[20] Class counsel will move for an award of actual costs and attorney's fees not to exceed one-third of the settlement fund.[21] The bankruptcy trustee takes no position with respect to any application for attorney's fees, enhancement awards, claims-administrator fees, and other costs and expenses so long as the settlement fund is not increased.[22]

The settlement agreement contains a formula for estimating each class member's share:

• Each Class Member shall receive 1 point for every dollar of total combined priority WARN Claims and Vacation Claims attributable to that Class Member, in accordance with Section 507(a)(4) of the Bankruptcy Code, as set forth and agreed upon in Exhibit A to the Settlement Agreement, which has been approved by the Bankruptcy Court.

• The Settlement Fund (after deductions for court approved attorneys' fees, settlement administration fees, enhancement awards, employer payroll taxes, and all other court approved expenses or disbursements) will be divided by the aggregate number of points for all Employee Class Members who do not opt out of the Settlement ("Point Value").

• Each Employee Class Member's total points will then be multiplied by the Point Value to determine his or her "Individual Settlement Amount."

The claim amounts are from Thelen's payroll records. Each class member's priority wage claim has been allowed in the lesser of the amount of the actual claim or $10,950, which is the

---

[18] Motion, ECF No. 86-1 at 10.

[19] Collins Decl. ¶ 34 — ECF No. 102-2; Motion — ECF No. 102-1 at 13.

[20] First Amendment to Settlement Agreement, § 1.29 – ECF No. 86-4 at 4.

[21] *Id.* § 3.2 – ECF No. 86-4 at 6.

[22] *Id.* §§ 3.1(H) & 3.2 – ECF No. 86-4 at 5-6.

1   Bankruptcy Code § 507(a)(4) cap on employee priority wage claims at the time Thelen filed for

2   bankruptcy. The system for computing each class member's proportionate share of the settlement

3   fund is in the settlement agreement and is a point system (based on WARN claims and vacation

4   claims attributable to the member) and a point value. A class member's share will not fall below

5   $50. A reserve of $10,950 will be carved out of the fund for each class member who opts out or

6   who previously filed a secured or priority claim; this is the maximum total priority wage claim an

7   individual may obtain under Section 507(a)(4) of the Bankruptcy Code as of the time Thelen's

8   bankruptcy was filed. The trustee will use this reserve to litigate and resolve any claims filed by

9   individuals who opt out of the settlement. [23] No settlement amounts will be paid to class members

10  if they fail to withdraw their claims with prejudice in the related case of "Comm'r of Lab. v.

11  Thelen LLP, Conn. Super. Ct., Index No. HHDCV-09-605930-S, as well as any and all other

12  related or similar litigation, administrative proceedings, and/or claims brought by or on behalf of

13  David Kuzia, Samuel Molinari, Paul Sarkis, Shellie Rosan, and/or Elizabeth Smith."[24]

14       The bankruptcy trustee will cause the settlement fund to be paid to the claims administrator on

15  or before the latter of (1) 45 days after the "Final Effective Date" (which is 30 days after final

16  approvals from the district and bankruptcy courts, assuming no appeals), or (2) 60 days after the

17  bankruptcy court approves the trustee's final report closing Thelen's bankruptcy estate. The

18  trustee has the discretion to make interim distributions and will do so if he has not submitted his

19  final report to the bankruptcy court after 45 days from the Final Effective Date.[25]

20       Class members have 180 days to cash their settlement checks after payment is mailed;

21  otherwise the money escheats to the state where the class members were working when they were

22  terminated.[26] If more than 5% of class members opt out, the trustee has 30 days after notice to

23  elect to terminate the settlement agreement to avoid a large number of unresolved claims.[27]

24

25  ---

    [23] Id. § 3.1(F) – ECF No. 86-4 at 5; Settlement Agreement § 3.1(A)-(E) – ECF No. 86-3 at 14-15.
26  [24] Settlement Agreement § 3.1(G) – ECF No. 86-3 at 15.

27  [25] Id. § 3.1(J) – ECF No. 86-3 at 16.
    [26] Id. § 3.1(L) – ECF No. 86-3 at 17.
28  [27] Id. § 2.10(E) – ECF No. 86-3 at 13.

1    Under the settlement agreement, the trustee also assigns to the class members the right to fees,

2 costs, or other claims asserted by Thelen in the Surrogate's Court action *In the Matter of Estate of*

3 *Chin-Chuan Wang*, File NO. 2550/2003 (Surrogate's Court: State of New York, County of New

4 York). Class counsel will assume responsibility for prosecuting this case, and any proceeds

5 collected will be distributed to class members through the allocation formula described above.[28]

6    In return for the settlement relief, the settlement agreement has a release, which generally is

7 that class members who do not opt out of the settlement will release Thelen and the trustee from

8 all claims that are or could have been asserted in this action or the bankruptcy action, including

9 but not limited to claims arising under the Federal WARN Act, the California WARN Act, and any

10 federal, state, or local law relating to vacation pay. Notwithstanding this release, if the bankruptcy

11 estate has sufficient funds to make a distribution to allowed general, unsecured creditors, the class

12 members retain their non-priority general unsecured claims against Thelen. These non-priority

13 general unsecured claims are limited to the individual total unsecured Vacation plus unsecured

14 WARN amounts listed in Exhibit A to the settlement agreement. The class members who retain a

15 non-priority general unsecured claim are subject to the competing claims of all other creditors and

16 compliance with bankruptcy rules and codes.[29]

17

18 **3. Notice**

19    The claims administrator is Class Action Administrators, Inc. ("CAA"); its responsibilities are

20 in the settlement agreement and include sending notice, skip-tracing returned notices, tracking

21 opt-out statements and notifying counsel of objections, opt-outs, and material communications

22 from class members, mailing tax forms to class members, setting up the account to distribute

23 payments, calculating class members' distributions, calculating payroll taxes, mailing checks, and

24 otherwise administering the settlement.[30] The court previously approved the form of notice and

25 the notice plan and directed notice.[31] The administrator complied with these procedures.[32]

---

26 [28] *Id.* § 3.1(K) – ECF No. 86-3 at 17.

27 [29] *Id.* § 4 – ECF No. 86-3 at 19–20.

28 [30] *Id.* § 2.3 – ECF No. 86-3 at 9–10.

[31] Order — ECF No. 99 at 11–12.

1    As of November 15, 2016, costs were $20,346, costs to complete administration are estimated

2 at $25,000, and total estimated costs thus are $45,346.[33] There are 755 class members; 11

3 objected, and 4 opted out.[34] The objectors objected that the attorney's fees and costs are

4 excessive, the employer's share of payroll taxes should not be paid out of the common fund, and

5 notice to the class is inadequate.[35] The bankruptcy trustee responded that the fees cannot exceed

6 one-third of the settlement, the fees application will not increase the total settlement fund, and it

7 thus does not oppose the fees.[36] The trustee also responded that employer-side payroll taxes are

8 appropriately paid from the settlement fund because the settlement effectively provides for

9 payment of all remaining funds in Thelen's bankruptcy estate, and there are no funds other than

10 the estate funds to pay the payroll taxes.[37] Finally, the trustee responds that the objectors did not

11 identify any deficiencies in the notice, it thus cannot address unspecified deficiencies.[38]

12

13                                          **ANALYSIS**

14 **1.   Jurisdiction**

15    This court has jurisdiction under 28 U.S.C. § 1331 for claims brought under the federal

16 WARN Act, 29 U.S.C. § 2101 *et seq.* The court has supplemental jurisdiction over the state-law

17 claims under 28 U.S.C. § 1367.

18

19 **2.   Certification of Classes**

20    The court reviews the propriety of class certification under Federal Rule of Civil Procedure

21 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court

22 "must pay 'undiluted, even heightened, attention' to class certification requirements" because the

23

24 [32] McDermott Decl. — ECF No. 102-7, ¶¶ 6–11.

25 [33] *Id.* ¶ 13.

   [34] *Id.* ¶¶ 10, 12.

26 [35] Objections — ECF No. 100; Objections — ECF No. 105.

27 [36] Trustee's Notice ¶ 1 — ECF No. 101.

   [37] *Id.* ¶¶ 4–9.

28 [38] *Id.* ¶ 10.

1    court will not have the opportunity to adjust the class based on information revealed at trial.

2    *Staton v. Boeing*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*,

3    521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

4        Class certification requires the following: (1) the class must be so numerous that joinder of all

5    members individually is "impracticable"; (2) there are questions of law or fact common to the

6    class; (3) the claims or defenses of the class representatives must be typical of the claims or

7    defenses of the class; and (4) the person representing the class must be able to fairly and

8    adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at

9    953.

10       Moreover, claims under the WARN Act are "particularly amenable to class litigation." *Finnan*

11   *v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989); *see New Orleans Clerks and*

12   *Checkers Union Local 1497 v. Ryan-Walsh, Inc.*, 1994 U.S. Dist. LEXIS 2403, *3-4 (E.D. La.

13   1994); *see also Quintero v. MulberryThai Silk, Inc.*, 2008 U.S. Dist. LEXIS 84976 (N.D. Cal.

14   2008) (certifying WARN Act class action).

15       Thus, the court finds (for settlement purposes only and for each proposed class) that the

16   proposed settlement class meets the Rule 23(a) prerequisites of numerosity, commonality,

17   typicality, and adequacy: (1) the class is so numerous that joinder of all members is

18   impracticable; (2) there are common questions of law and fact common to the class; (3) the

19   claims or defenses of the representative parties are typical of the claims or defenses of the class;

20   and (4) the representative party will fairly and adequately protect the interests of the class. *See*

21   Fed. R. Civ. P. 23(a). The court also finds (for settlement purposes only) that questions of law or

22   fact common to class members predominate over any questions affecting only individual

23   members, and a class action is superior to other available methods for fairly and efficiently

24   adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Brown v. Hain Celestial Group, Inc.*,

25   No. 11-CV-03082-LB, 2014 WL 6483216, at *15–20 (N.D. Cal. Nov. 18, 2014).  The court

26   certifies the proposed class under Federal Rule of Civil Procedure 23(b)(3) for settlement

27   purposes only.

28

1

### 3.   Class Representative, Class Counsel, and Claims Administrator

2

3

4

5

6

The court confirms its prior appointment of CAA as the class administrator and the named plaintiffs — Adam Bergman, Kendrick Patterson, Michael Attianese, Andrea Levy, Raymond R. Plante, and Daryl Yeakle — as class representatives.[39] The court appoints Blum Collins, LLP as class counsel. *See* Fed. R. Civ. P. 23(a) & (g)(1). The court finds that they have sufficient qualifications, experience, and expertise in prosecuting class actions.

7

8

### 4.   Notice

9

10

11

12

13

As described above, the claims administrator provided notice to the members of the class in the form that the court had approved. The notice met all legal requisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding notice.

14

15

### 5.   Approval of Settlement

16

17

18

19

20

21

22

23

24

25

26

27

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. See *Hanlon*, 150 F.3d at 1026–27. In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government

28

---

[39] Order — ECF No. 99 at 11.

1    participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation

2    omitted).

3    "Where a settlement is the product of arms-length negotiations conducted by capable and

4    experienced counsel, the court begins its analysis with a presumption that the settlement is fair

5    and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal.

6    Apr. 22, 2010); *see Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a

7    good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . .");

8    *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

9    The court finds the settlement fair, reasonable, and adequate under the *Hanlon* factors.

10   First, the plaintiffs represent that the settlement is fair because the settlement agreement fixes

11   the nature and extent of the class members' claims that will be allowed against the bankruptcy

12   estate. The amounts and the priorities of the claims are consistent with Thelen's payroll records

13   and law regarding priorities under the Bankruptcy Code. As described above and in the settlement

14   agreement, each class member's priority wage claim has been allowed in the lesser of the amount

15   of the actual claim or $10,950, which is the Bankruptcy Code § 507(a)(4) cap on employee

16   priority wage claims at the time Thelen filed for bankruptcy. If a class member's claim exceeds

17   the cap, it will be treated as a general, unsecured claim if there is a pro-rata distribution to

18   unsecured creditors.[40]

19   Second, the settlement fund is the maximum amount of remaining estate assets subject to the

20   Aggregate Settlement Cap, less funds needed to pay allowed administrative claims and opt-outs

21   from the settlement.[41]

22   Third, the settlement provides a streamlined method for fixing the class members' claims and

23   providing for payment of them. According to the plaintiffs, employees have filed hundreds of

24   claims for different amounts with different priorities. The settlement agreement allows resolution

25   of the claims in a unified manner that is consistent with the Bankruptcy Code. Absent the

26

27   _____

28   [40] Collins Decl. ¶ 24 — ECF No. 86-2.
     [41] *Id.* ¶ 25.

1  settlement, the trustee would have to review each claim individually, resulting in costs that would

2  erode the estate.[42]

3      Fourth, litigation poses risk, and — among other issues — it would diminish the remaining

4  value of the estate to the detriment of class members' recoveries.[43]

5      Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and

6  was reached after mediation with an experienced bankruptcy judge.

7      In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair,

8  adequate, and reasonable" such that approval of the settlement is warranted. *See Officers for*

9  *Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir.

10  1982). The court thus approves the settlement.

11

12  **6.  Attorney's Fees and Costs**

13      The settlement terms limit fees to one-third of the settlement fund. Class counsel thus moves

14  for fees of the lower of (1) one-third of the settlement fund (roughly $1 million based on the

15  Trustee's current estimate of $3 million remaining in the settlement fund) or (2) $1,397,204.25,

16  which is a 1.5 multiplier of their current lodestar of $931,469.50.[44]

17      Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the

18  court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by

19  the parties' agreement." Fee provisions included in proposed class-action settlements must be

20  reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

21  The court is not bound by the parties' settlement agreement as to the amount of attorney's fees.

22  *See id.* at 942–43. The Ninth Circuit has instructed district courts to review class fee awards with

23  special rigor:

24          Because in common fund cases the relationship between plaintiffs and their attorneys
25          turns adversarial at the fee-setting stage, courts have stressed that when awarding

26  ───────────────
    [42] *Id.* ¶ 26.

27  [43] *See* Motion — ECF No. 102-1 at 12−19 (discussing defenses, discovery needed for scienter
    evidence, and expert discovery, among other issues).

28  [44] *Id.* at 24.

1
2

attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

3   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

4   When counsel recovers a common fund that confers a "substantial benefit" on a class of

5   beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v.*

6   *Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). California fee-

7   shifting statutes also authorize the award of fees. When a fee-shifting statute applies, courts may

8   award fees on the lodestar method. *See California Practice Guide: Federal Civil Procedure*

9   *Before Trial* § 10:870 (Rutter Group 2015) (collecting cases); *see PLCM Grp. v. Drexler*, 997 P.2d

10  511, 518 (Cal. 2000) (fee-setting inquiry under California law ordinarily begins with the

11  lodestar); *Serrano v. Priest*, 569 P.2d 1303, 1316 n.23 (Cal. 1977). In common-fund cases, courts

12  may calculate a fee award under either the "lodestar" or "percentage of the fund" method.  *Id.*;

13  *Hanlon*, 150 F.3d at 1029.

14  Where the settlement involves a common fund, courts typically award attorney's fees based

15  on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees

16  should equal 25% of the settlement, although courts diverge from the benchmark based on a

17  variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the

18  issues, length of the professional relationship, the market rate, and awards in similar cases."

19  *Morales v. Stevco, Inc.*, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v.*

20  *Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific*

21  *Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six*

22  *(6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

23  When determining the value of a settlement, courts consider the monetary and non-monetary

24  benefits that the settlement confers. *See, e.g., Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar,*

25  *Inc.,* 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the

26  value of injunctive relief obtained as a result of settlement in determining the appropriate fee.");

27  *In re Netflix Privacy Litig.*, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value

28

1  "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive

2  relief").

3      Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

4  benefits being made available to class members rather than the actual amount that is ultimately

5  claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *23 (N.D. Cal. Mar. 28, 2007)

6  (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court

7  abused its discretion in basing attorney fee award on actual distribution to class" instead of

8  amount being made available) (quoted language from *Young*)).

9      If the court applies the percentage method, it then typically roughly calculates the lodestar as a

10  "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg*

11  *Co.,* 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25,

12  48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980); *Melnyk v.*

13  *Robledo*, 64 Cal. App. 3d 618, 624 (1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970).

14  "The lodestar . . . is produced by multiplying the number of hours reasonably expended by

15  counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26

16  (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying

17  a positive or negative "multiplier to take into account a variety of other factors, including the

18  quality of the representation, the novelty and complexity of the issues, the results obtained, and

19  the contingent risk presented." *Id.*

20      Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed.

21  R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover

22  reasonable expenses that would typically be billed to paying clients in non-contingency matters.;

23  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable

24  costs in class-action settlement). Costs compensable under Rule 23(h) include "nontaxable costs

25  that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

26      Based on the declarations submitted by the plaintiff's counsel, the court finds that the lodestar

27  cross-check substantiates the fees claimed. The billing rates are within normal and customary

28  ranges for timekeepers with similar qualifications and experience in the San Francisco market.

1   The rates counsel used are appropriate given the deferred and contingent nature of counsel's

2   compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent

3   rates, rather than historical rates, should be applied in order to compensate for the delay in

4   payment . . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Wash. Pub.*

5   *Power Supply Sys. Secs. Litig.,* 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has

6   discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys'

7   current rates to all hours billed during the course of litigation; or (2) by using the attorneys'

8   historical rates and adding a prime rate enhancement."). Counsel also submitted a sufficient

9   breakdown of the attorneys' billing efforts for the court to reach its conclusion about the lodestar.

10      The court awards fees at the lesser of one-third of the settlement fund or $1 million, which

11  involves the application of a modest multiplier to the actual lodestar. This is slightly more than

12  the 25% benchmark under the "percentage of the fund" approach, *see Hanlon*, 150 F.3d at 1029,

13  but the court finds that the fees are reasonable and appropriate based on counsel's efforts, the

14  protracted litigation, the sophisticated players, the quality of the representation, and the

15  contingent risk. The court thus overrules the objectors' objections.[45]

16      The court awards costs of $16,715 and CAA's actual costs not to exceed $45,346.

17

18  **7.  Service Award**

19      District courts must evaluate proposed incentive awards individually, using relevant factors

20  that include "the actions the plaintiff has taken to protect the interests of the class, the degree to

21  which the class has benefitted from those actions, . . . [and] the amount of time and effort the

22  plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are

23  discretionary . . . and are intended to compensate class representatives for work done on behalf of

24  the class, to make up for financial or reputational risk undertaken in bringing the action, and,

25  sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563

26  F.3d at 958–59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive

27  awards may be proper but [has] cautioned that awarding them should not become routine

28

---

[45] As stated on the record, the court overrules the objectors' other objections too.

1   practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing

2   *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be

3   vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the

4   class representatives." *Id.* at 1164.

5       Counsel described sufficiently the efforts of the named plaintiffs, including consulting with

6   counsel, producing relevant documents, providing declarations, and otherwise participating in the

7   litigation.[46] The court approves $5,000 for each named plaintiff for a total of $30,000.

8

9                                    **CONCLUSION**

10      The court certifies the classes set forth above in the Statement for settlement purposes only

11  and approves the class-action settlement for a total settlement amount of approximately $3

12  million, which is allocated as follows: (1) the lesser of one-third of the settlement fund or $1

13  million for attorney's fees; (2) costs of $16,715; (3) CAA's actual costs not to exceed $45,346; (4)

14  service awards of $5,000 for the named plaintiffs for a total of $30,000; and (5) the balance to be

15  distributed according to the formula in the settlement agreement. The claims administrator must

16  make all payments required by this order in accordance with the terms of the settlement

17  agreement.

18      Pursuant to Federal Rule of Civil Procedure 23(c)(3), all class members who satisfy the class

19  definition except for those class members who properly requested exclusion are class members

20  bound by this judgment and by the terms of the settlement agreement.

21      Based on this final approval of the settlement, all settlement class members who did not

22  timely opt out have released the defendants and the bankruptcy trustee from the released claims as

23  set forth in the settlement agreement (and as summarized in the Statement). Notwithstanding this

24  release, if the settlement fund has sufficient funds to make a distribution to allowed general,

25  unsecured creditors, retain their non-priority general unsecured claims against Thelen; these non-

26  priority general unsecured claims are limited to the individual total unsecured vacation plus

27  unsecured WARN amounts listed in Exhibit A to the settlement agreement. The class members

28

---

[46] Collins Decl. — ECF No. 102-2, ¶ 55.

1  who retain a non-priority general unsecured claim are subject to the competing claims of all other

2  cred itors and compliance with bankruptcy rules and codes.

3      The named plaintiffs and class members — except those individuals who are timely and

4  validly opted out of the settlement — are enjoined from pursuing the released claims as set forth

5  in the settlement agreement and are barred and enjoined from participating in any other individual

6  or class lawsuit, action, claim, or other proceeding against the releasees (as set forth in the

7  settlement agreement) concerning any claims asserted in this litigation or that are released under

8  the terms of the settlement.

9      Without affecting the finality of the judgment, the court retains continuing and exclusive

10  jurisdiction over the parties to the settlement agreement and the class members to administer,

11  supervise, construe, and enforce the settlement agreement in accordance with its terms for the

12  mutual benefit of the parties. Because Thelen LLP is currently proceeding in a Chapter 7

13  bankruptcy  filed in the United States Bankruptcy Court for the Southern District of New York

14  styled *In re Thelen LLP, Debtor*, No. 09-15631(MEW), the court orders that the Bankruptcy

15  Court shall retain jurisdiction and authority to interpret and enforce the terms and provisions of

16  the Settlement to the extent they relate to core bankruptcy matters, including, but not limited to:

17  (1) classifying and calculating the amount of the Settlement Fund; (2) the amounts and priority of

18  the claims of the Employee Class Members; and (3) the claims of any Employee Class Members

19  who opt out of the settlement.

20      The court dismisses the case with prejudice, and the defendants are hereby released from all

21  further liability for the released claims. The final approval order and judgment are not an

22  admission by the defendants of any liability or wrongdoing in this or in any other proceeding.

23      The court finds that no reason exists for delay in ordering final judgment pursuant to Federal

24  Rule of Civil Procedure 54(b) and thus directs the entry of judgment forthwith.

25      This disposes of ECF No. 102.

26  **IT IS SO ORDERED.**

27  Dated: December 9, 2016

28  
LAUREL BEELER
United States Magistrate Judge